STATE OF NORTH CAROLINA v. MICHAEL LEVON TICE, DEFENDANT

No. COA07-226

(Filed 5 August 2008)

**1. Assault— deadly weapon inflicting serious injury—serious-ness of injury**

The trial court correctly denied defendant's motion to dismiss a charge of assault with a deadly weapon inflicting serious injury where defendant argued that there was insufficient evidence of a serious injury, but the victim was shot in the knee; drove himself to the hospital; received treatment and pain medication, which he took for two weeks (although he was not hospitalized); walked with a limp for one to two weeks; and took about a month for his knee to fully heal.

**2. Constitutional Law— effective assistance of counsel—stip-ulation to prior offense**

Defendant was not denied effective assistance of counsel on a charge of possession of a firearm by a felon where his counsel agreed to stipulate that he had been convicted of possession of cocaine and did not insist that the nature of the felony not be disclosed to the jury. Defendant did not demonstrate that the charges equate such that the jury was likely to believe that the past charge makes the current one more likely.

**3. Sentencing— judge's remarks—defendant's rejection of plea offers**

The trial court's remarks about defendant's rejection of a previous plea offer and the sentence to which he would be exposed if he rejected another were an effort to ensure that defendant was

fully informed of the risk he was taking and did not indicate consideration of improper facts in sentencing defendant.

**4. Sentencing— judge's remarks—rejection of plea bargain— use of fabricated evidence**

A trial judge's remarks at sentencing did not indicate punishment for rejecting a plea bargain where the judge justified the sentence with his belief that defendant's evidence was fabricated.

Appeal by defendant from judgments entered 13 September 2006 by Judge Jerry Braswell in Lenoir County Superior Court. Heard in the Court of Appeals 13 November 2007.

*Attorney General Roy Cooper, by Assistant Attorney General Donna B. Wojcik, for the State.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Katherine Jane Allen, for defendant-appellant.*

GEER, Judge.

Defendant Michael Levon Tice appeals from his convictions of possession of a firearm by a felon and assault with a deadly weapon inflicting serious injury. Although defendant argues on appeal that the State failed to prove that the victim was seriously injured, we find sufficient the State's evidence that defendant was shot in the knee, took pain medication for two weeks, walked with a limp for one to two weeks, and required one month to heal. We also find unpersuasive defendant's contention that the trial judge based defendant's sentence in part on defendant's insistence on a jury trial. We, therefore, hold that defendant received a trial free of prejudicial error.

Facts

The State's evidence tended to show the following facts. On 16 November 2005, at approximately 11:30 p.m., defendant was playing poker at a club with Dexter Bradshaw and three other men. When Bradshaw argued with one of the other players about who had the better hand, everyone but defendant began to laugh. Defendant became upset and then left the card game angrily, saying "I'll be right back."

Several minutes later, Bradshaw looked out the window of the club and did not see defendant's car. Approximately 20 minutes after defendant left the club, Bradshaw decided to go home. One of the

STATE v. TICE

[191 N.C. App. 506 (2008)]

other men, Mr. Best, left with Bradshaw. As the two men were walking on the sidewalk towards the parking lot, defendant drove down the street towards them. When defendant stopped his car in front of Bradshaw and Best and got out, Best went back inside the club.

Defendant walked up to Bradshaw, pointing a handgun at him. When defendant was approximately five feet from Bradshaw, defendant first pointed the gun at Bradshaw's head, followed by his chest, and then his knee. Defendant then shot Bradshaw in the knee. Defendant got back into his car, parked it in the parking lot, and ran back to Bradshaw, shouting, "I should have killed you." Bradshaw walked to his car and drove himself to the hospital. The bullet had entered and exited through Bradshaw's knee. Bradshaw was on pain medication for two weeks and walked with a limp for one to two weeks.

The morning after the shooting, defendant drove to Greensboro. He stayed in Greensboro until he received a phone call informing him that there was a warrant for his arrest. On 30 May 2006, defendant was indicted on charges of possession of a firearm by a convicted felon and assault with a deadly weapon inflicting serious injury.

At trial, defendant testified that he went back to the club approximately 30 minutes after he left. He saw Bradshaw walking down the street and checked with Bradshaw to make sure the men were still playing poker. While defendant was talking with Bradshaw, defendant heard a loud bang, and Bradshaw said that he was shot. Defendant denied having a gun, threatening Bradshaw, or knowing who shot Bradshaw. Defendant also presented two witnesses to corroborate his assertion that he did not have a gun and did not shoot Bradshaw.

On 13 September 2006, the jury found defendant guilty of possession of a firearm by a felon and assault with a deadly weapon inflicting serious injury. The court imposed consecutive sentences of 18 to 22 months imprisonment for possession of a firearm by a felon and 42 to 60 months imprisonment for assault with a deadly weapon inflicting serious injury. Defendant timely appealed his conviction.

I

[1] Defendant contends the trial court erred by denying his motion to dismiss.[1] When considering a motion to dismiss, the trial court must

1. Defendant's argument regarding the motion to dismiss is limited to the assault charge. Defendant has not contended that the trial court should have dismissed the charge of possession of a firearm.

determine whether the State presented substantial evidence of each element of the crime and of the defendant's being the perpetrator. *State v. Robinson,* 355 N.C. 320, 336, 561 S.E.2d 245, 255, *cert. denied,* 537 U.S. 1006, 154 L. Ed. 2d 404, 123 S. Ct. 488 (2002). " 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *State v. Matias,* 354 N.C. 549, 552, 556 S.E.2d 269, 270 (2001) (quoting *State v. Brown,* 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984)). The evidence must be viewed "in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose,* 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied,* 515 U.S. 1135, 132 L. Ed. 2d 818, 115 S. Ct. 2565 (1995).

In order to be found guilty of assault with a deadly weapon inflicting serious injury, the State must prove that the defendant (1) assaulted the victim, (2) with a deadly weapon, (3) inflicting serious injury, (4) not resulting in death. *State v. Woods,* 126 N.C. App. 581, 592, 486 S.E.2d 255, 261 (1997). Defendant concedes that the State presented sufficient evidence as to all of the elements except for the third. Consequently, the sole issue before us is whether the State presented substantial evidence that Bradshaw sustained a "serious injury" when shot by defendant.

"Whether a serious injury has been inflicted depends upon the facts of each case and is generally for the jury to decide under appropriate instructions." *State v. Hedgepeth,* 330 N.C. 38, 53, 409 S.E.2d 309, 318 (1991). When making its determination, a jury may consider various factors such as hospitalization, pain, loss of blood, and time lost at work. *Id.* Nevertheless, the absence of hospitalization does not preclude a jury from finding a serious injury. *Id.*

In *State v. Bagley,* 183 N.C. App. 514, 526, 644 S.E.2d 615, 623 (2007), the defendant fired two bullets at the victim. One of the bullets struck the victim and traveled through his right leg. *Id.* After the shooting, the victim refused help from a passerby. *Id.* at 527, 644 S.E.2d at 624. He instead drove home, waited almost 30 minutes, and then asked a friend for a ride to the hospital because his leg hurt too much to drive. *Id.* On the way to the hospital, the victim changed his mind and went back to the scene of the shooting where he gave a statement to the police and sought treatment from a paramedic. *Id.* Later, at the hospital, the victim was examined, given pain medication, and released after two hours. *Id.* The victim suffered pain for two to three weeks after the shooting. *Id.,* 644 S.E.2d at 623. This Court held that this evidence, when viewed in the light most favorable

to the State, was sufficient to permit a jury to find that the victim was seriously injured and, therefore, the trial court properly denied the defendant's motion to dismiss. *Id.*

The evidence of injury in this case is materially indistinguishable from that in *Bagley.* Bradshaw drove himself to the hospital and, although he was not hospitalized, he did receive treatment and was prescribed pain medication that he took for two weeks. Additionally, he walked with a limp for one to two weeks after the shooting, and it took approximately one month for his knee to fully heal. Based on this evidence and *Bagley,* we hold the trial court did not err in denying defendant's motion to dismiss for lack of evidence of a serious injury. *See also Hedgepeth,* 330 N.C. at 54, 409 S.E.2d at 319 (holding trial court did not err in giving peremptory instruction that victim's injury was serious as a matter of law when victim was shot and bullet traveled through thickness of her ear); *State v. Owens,* 65 N.C. App. 107, 109, 308 S.E.2d 494, 497 (1983) (holding there was sufficient evidence for jury to determine whether victim suffered a serious injury when evidence showed victim was shot in right arm).

II

[2] Defendant next contends that he was denied effective assistance of counsel when his trial lawyer agreed to stipulate that defendant had a prior felony conviction, for purposes of the firearm charge, without insisting, as a condition of that stipulation, that the nature of the conviction not be disclosed to the jury. Defendant has, however, failed to demonstrate how he was prejudiced.

In order to successfully prove a claim of ineffective assistance of counsel, a defendant must establish not only that his counsel's performance was deficient, but also that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington,* 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). Our Supreme Court has held that "if a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient." *State v. Braswell,* 312 N.C. 553, 563, 324 S.E.2d 241, 249 (1985).

During the trial in this case, the State requested that defendant stipulate that he had been convicted of possession of cocaine on 11 January 1990. Defense counsel agreed to the stipulation as requested.

On appeal, defendant argues that his trial counsel should have relied upon *Old Chief v. United States*, 519 U.S. 172, 136 L. Ed. 2d 574, 117 S. Ct. 644 (1997), and insisted that the nature of the felony—possession of cocaine—not be disclosed to the jury. Rather than providing any specific explanation as to how he was prejudiced by the identification of the felony, defendant simply states in his brief: "Evidence that the Defendant is a convicted drug possessor is prejudicial to a fair determination by the jury of the issues in the present case against him. The prejudicial nature of such evidence is apparent."

The prejudice is not apparent to us. We do not see how a prior conviction of possession of cocaine, a nonviolent crime, would adversely affect a defendant charged with the violent crime of assault with a deadly weapon inflicting serious injury. In *State v. Jones*, 322 N.C. 585, 589, 369 S.E.2d 822, 824 (1988) (quoting *State v. McClain*, 240 N.C. 171, 174, 81 S.E.2d 364, 366 (1954)), cited by defendant, our Supreme Court observed: " 'Proof that a defendant has been guilty of another crime *equally heinous* prompts to a ready acceptance of and belief in the prosecution's theory that he is guilty of the crime charged.' " (Emphasis added.) Defendant has not demonstrated that a possession of cocaine conviction equates with the charges in this case such that the jury was likely to believe that if he possessed cocaine in the past, he was likely to have possessed a gun and shot Bradshaw 15 years later. We fail to see how defendant would have fared better if the jury had been left to speculate as to the nature of defendant's prior felony conviction as opposed to being informed that the conviction was for cocaine possession. This assignment of error is, therefore, overruled.

### III

**[3]** Defendant next contends his constitutional right to a jury trial was violated because the trial court based its sentence on defendant's refusal of two previous plea agreements offered by the State. "A sentence within the statutory limit will be presumed regular and valid. However, such a presumption is not conclusive." *State v. Boone*, 293 N.C. 702, 712, 239 S.E.2d 459, 465 (1977). That presumption is overcome where the record reveals that the court considered improper matters in determining the sentence. *Id.*

It is well established that "[a] criminal defendant may not be punished at sentencing for exercising [his] constitutional right to trial by jury." *State v. Cannon*, 326 N.C. 37, 39, 387 S.E.2d 450, 451 (1990). "Where it can reasonably be inferred from the language of the trial

judge that the sentence was imposed at least in part because defendant did not agree to a plea offer by the state and insisted on a trial by jury, defendant's constitutional right to trial by jury has been abridged, and a new sentencing hearing must result." *Id.*

In this case, defendant first points to the fact that at the beginning of the trial, the trial judge acknowledged defendant's refusal to accept the plea offered by the State:

The Court: Mr. Tice, it has come to the Court's attention that at the earlier stage in these proceedings in the administrative term of court that the State offered you an opportunity to plead to a misdemeanor and you rejected that offer; is that correct, sir?

A. Yes, sir.

The Court: Okay. Today your lawyer has had some discussions with both the District Attorney and the Court about that previous offer and the State said, because of your rejection, that offer was no longer available. It is my understanding that the State has tendered to you through your lawyer an opportunity for you to plead to a class E felony, to be sentenced at the low end of the mitigated range, which would be a sentence of not less than 28 months nor more than 43 months; that the State would dismiss the class G felony.

The class E felony is assault with a deadly weapon inflicting serious bodily injury and the class G felony would be possession of a firearm by a convicted felon.

It's the Court's understanding that you have also rejected that offer; is that correct?

A. Yes.

The Court: Now you understand that if you go to trial and if you are convicted of both of these charges then instead of a possible sentence of not less than 28 months nor more than 43 months that you could be looking at a sentence of not less than 66 months nor more than 89 months. Do you understand that, sir?

A. Yes, sir.

The Court: Okay. And so what you are telling the Court, at least what your lawyer has indicated that you are telling the Court, is that understanding the significant increase in the pos-

sible sentence that you could get, that you are still rejecting the State's offer; is that correct, sir?

A. Yes, sir.

. . . .

The Court: You clearly understand that if you are convicted, the State is going to be urging this Court that you not be sentenced in the mitigated range, but that you be sentenced in a different range exposing you to substantially more time, over twice what you are exposed to now. Do you understand that, sir?

A. Yes, sir.

Defendant argues that this colloquy was an "implicit warning" to defendant that the trial court would likely substantially increase the sentence if defendant went to trial.

A review of this colloquy, however, reveals that the trial judge was ensuring that defendant was fully informed of the risk he was taking given that he had previously rejected a plea that would have resulted in a misdemeanor sentence and, at that point, was rejecting a plea that would result in a single mitigated-range sentence of 28 to 43 months. The trial judge set out the risks of going forward: being convicted of two charges instead of one; *the State's* requesting a non-mitigated-range sentence; and a total possible sentence of 66 to 89 months. Through his questions, the trial judge ensured that defendant fully understood the possible ramifications of his rejection of the plea, including the fact that he was "exposing [himself] to substantially more time."

[4] Defendant also points to the trial judge's remarks prior to sentencing defendant. After giving defendant an opportunity to speak, which he declined, the trial judge stated:

Mr. Tice, I imagine you've got to be feeling awfully dumb along right now. You've had ample opportunities to dispose of this case. The State has given you ample opportunity to dispose of it in a more favorable fashion and you chose not to do so. And I'm not sure if you thought that you were smarter than everybody else or that everybody else was just dumb.

I've listened to the evidence in this case and in my opinion it's overwhelming. Your witnesses were completely uncredible in their testimony and, quite frankly, I think their stories were fabri-

cated. You know, you offered no explanation whatsoever, for somebody who has known you for as long as the gentlemen have known you, to make up such a story. And the evidence to this Court was pretty clear that you got upset and you went home and you got a firearm and you came back and you shot somebody that had been playing cards with you.

Then you fled the jurisdiction to go to Greensboro. That is all this case is about and there is no reason for those gentlemen to come into this courtroom, especially the victim, to say you out of all the people, of all the other folks in Lenoir County that he could have identified as having shot him, he said it was you and I find it more than coincidental that nobody heard a shot until you came back on the scene. So in spite of all of what your witnesses said, the fact remains that no shot was heard until you got back, that when you left you were agitated, you were irritated and you told everybody, I'll be back. They apparently took you at your word.

As your counsel indicated, there were some things that perhaps were unsaid or not known, but one thing was clear to the Court and that was they believed what you said which is why they were looking out the window, which is why they were trying to be very careful when they left the club. And low and behold, you happened to drive up and then a shot is heard. I think that's more than coincidental. I think it was heard when you drove up because you fired it. For that, I intend to sentence you.

Defendant argues that the trial judge's language during sentencing indicates that defendant received the sentences that he did because he chose to exercise his right to a jury trial rather than, in the words of the judge, "dispose [of the case] in a more favorable fashion."

This Court addressed similar remarks in *State v. Gantt*, 161 N.C. App. 265, 588 S.E.2d 893 (2003), *disc. review denied*, 358 N.C. 157, 593 S.E.2d 83 (2004). During the sentencing phase of that case, the trial court stated to the defendant:

"At the beginning of the trial I gave you one opportunity where you could have exposed yourself probably to about 70 months but you chose not to take advantage of that. I'm going to sentence you to a minimum of 96 and a maximum of 125 months in the North Carolina Department of Corrections. That's a 125-month sentence; however, if you have good behavior and don't get in any trouble while you're in the Department of Corrections, you're

only looking at seven years versus more than ten years. If you get in trouble while you're in the Department of Corrections, you'll have to serve that entire 125-month sentence, which is ten years and five months."

*Id.* at 272, 588 S.E.2d at 898. This Court held that these statements did not give rise to improper considerations because there was no " 'express indication of improper motivation.' " *Id.* (quoting *State v. Johnson*, 320 N.C. 746, 753, 360 S.E.2d 676, 681 (1987)). *See also State v. Person*, 187 N.C. App. 512, 528, 653 S.E.2d 560, 570 (2007) (concluding trial court did not improperly consider defendant's decision to go to trial when court mentioned defendant's recent refusal to accept plea offer, but additional remarks indicated that court, in referencing that rejection, was questioning sincerity of defendant's comments to court at sentencing), *rev'd in part on other grounds*, 362 N.C. 340, —— S.E.2d —— (2008).

We do not believe that the remarks in this case, when viewed in context, indicate an improper motivation. The totality of the trial judge's remarks reveals that he was not sentencing defendant more severely for choosing to reject a plea bargain, but rather the trial judge was focusing on his conclusion that defendant had submitted false testimony and "fabricated" testimony from other witnesses. The trial judge's initial comments referencing the plea bargain appear to be an unfortunate comment on defendant's strategic gamble to forego a plea to a misdemeanor in favor of defending against substantial evidence with fabricated evidence. While such comments are unnecessary, they do not necessarily mandate—in light of the trial judge's further explanation—the conclusion that the trial judge was basing his choice of sentence on defendant's exercise of his constitutional right to a jury trial. The trial judge noted that defendant made a bad choice, but justified the sentence he imposed on his belief that defendant's evidence was fabricated. *Compare Cannon*, 326 N.C. at 39, 387 S.E.2d at 451 (remanding to trial court when trial judge indicated to defense counsel that in the event of a conviction the court would impose the maximum sentence as a result of defendants' refusal to accept a plea offer); *Boone*, 293 N.C. at 712, 239 S.E.2d at 465 (remanding for re-sentencing when record disclosed that trial judge " 'indicated that he would be compelled to give the defendant an active sentence due to the fact that the defendant had pleaded not guilty and the jury had returned a verdict of guilty' ").

The trial judge's remarks are somewhat similar to those of the trial judge in *State v. Peterson*, 154 N.C. App. 515, 518, 571 S.E.2d 883,

885 (2002), cited by defendant. The *Peterson* trial judge stated defendant had " 'rolled the dice in a high stakes game with the jury,' " had attempted " 'to be a con artist with the jury,' " and the evidence was so overwhelming " 'that any rational person would never have rolled the dice and *asked for a jury trial.*' " *Id.* (emphasis added). Thus, in *Peterson*, the judge specifically referenced the defendant's request for a jury. We believe this case is more comparable to *Gantt*, especially since a review of the trial judge's entire remarks reveal that the actual basis for the sentence was the trial judge's conviction that defendant had fabricated evidence.

Although we do not believe resentencing is required in this case, we caution trial judges to ensure that sentencing decisions are not based upon a defendant's decision to proceed to trial despite overwhelming evidence of guilt or the effect on witnesses. Such considerations may play no role in sentencing. Moreover, judges must take care to avoid using language that could give rise to an appearance that improper factors have played a role in the judge's decision-making process even when they have not.

No error.

Judges WYNN and STEELMAN concur.