STATE OF NORTH CAROLINA
v.
MITCHELL DEMARAS ZEIGLAR, Defendant.
No. COA09-814.
Court of Appeals of North Carolina.
Filed: February 2, 2010.
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General J. Philip Allen, for the State.
William D. Spence for defendant-appellant.
HUNTER, Robert C., Judge.
Defendant Mitchell Demaras Zeiglar appeals from his convictions of three counts of first degree sexual offense and two counts of taking indecent liberties with a minor. Defendant primarily argues that the trial court erred in denying his motions to dismiss the charges for insufficient evidence. We conclude, however, that the State presented substantial evidence of each element of each crime charged and thus the trial court properly submitted the charges to the jury. Defendant also challenges the trial court's subsequent entry of an order directing him to submit to lifetime satellite-based monitoring ("SBM"). As defendant failed to file a notice of appeal from the trial court's SBM order, this Court lacks jurisdiction to review the trial court's order. We, therefore, dismiss defendant's arguments regarding the trial court's SBM order.

Facts
The State's evidence tended to establish the following facts at trial: In 2005, N.S. ("Ned"), who was then 11 years old, was living with defendant, his grandfather, in Greensboro, North Carolina.[1] In the fall of that year, in Ned's bedroom, defendant made Ned perform oral sex on defendant. Defendant hit Ned and yelled at him when he tried to stop. After "a minute or so," defendant ejaculated. Defendant told Ned that if he told anyone about what happened, Ned would be separated from his family or put in a foster home.
Again, later in the fall, defendant made Ned perform oral sex on him in his bedroom near the kitchen doorway. After making Ned perform oral sex on him, defendant told Ned to pull down his pants, and, when he did, defendant threw him over the side of the bed so that he was "halfway on and halfway off." Defendant first "put his finger into [Ned's] butt," and then inserted his erect penis into Ned's anus, causing a "sharp pain." On a third occasion in the fall of 2005, defendant "put his penis in [Ned's] anus," but did not make him perform oral sex on defendant.
In January 2006, Jerry Ufot, a family assessment investigator with Guilford County Department of Social Services ("DSS"), received a complaint that Ned might be sick with pneumonia and defendant was not getting him proper medical treatment. Defendant told Mr. Ufot that Ned had refused to eat or drink anything and that he had contacted a doctor. According to defendant, the doctor had run some tests but was unable to find anything wrong with Ned and had referred Ned to a specialist. Mr. Ufot saw Ned and noted that he had trouble breathing and that he looked "pale, tired, somehow dehydrated." During the visit, Ned indicated to Mr. Ufot through sign language that he could not talk.
Ned was taken to North Carolina Baptist Hospital in February 2006 because he was still not eating, drinking, or talking. The medical staff indicated to Mr. Ufot that they were concerned about Ned's "fetal appearance," particularly that he walked like an "infant child." The medical personnel explained that this behavior was indicative of child sexual abuse. In March 2006, Mr. Ufot was contacted by the hospital after Ned tested positive for chlamydia.
Ned was later transferred to UNC Medical Center. On 13 July 2006, Mr. Ufot received a report from UNC Medical Center indicating that during interviews with social workers, Ned had alleged that defendant sexually abused him. The next day, 14 July 2006, Mr. Ufot went to see Ned in the hospital. When he asked him about the allegations, Ned told Mr. Ufot that "his Pa-Pa did something sexual to him" and that he did not want to "go back to his Pa-Pa." After Mr. Ufot interviewed defendant, who denied the allegations, he referred the case to the Greensboro Police Department.
Defendant was arrested and charged with three counts of first degree sexual offense and two counts of taking indecent liberties with a child, all allegedly occurring between 26 December 2005 and 1 February 2006. Defendant pled not guilty and the case proceeded to trial. In addition to Ned and Mr. Ufot testifying, N.C. ("Nancy"), defendant's granddaughter and Ned's half-sister, was permitted to testify over defendant's objection about instances when defendant sexually abused her while she was living with him.[2] Nancy remembered one occasion when she was 11 where defendant came into her bedroom and tried to put his erect penis in her mouth. On another night, defendant walked into her bedroom naked, except for a sheet over his penis, got on top of Nancy, held her down, and engaged in vaginal intercourse with her.
At the close of the State's evidence, and after electing to not present any evidence in his defense, defendant moved to dismiss all the charges against him for insufficient evidence. The trial court denied both motions. The jury found defendant guilty of all charges. The court consolidated one count of first degree sexual offense and one count of indecent liberties into one judgment and sentenced defendant to a presumptive-range term of 300 to 369 months imprisonment. The court then consolidated the remaining two counts of first degree sexual offense and one count of indecent liberties into another judgment and sentenced defendant to a consecutive presumptive-range term of 300 to 369 months imprisonment. Defendant gave notice of appeal in open court from his convictions. After sentencing, the trial court found that defendant had committed "aggravated offense[s]" and ordered defendant to submit to lifetime monitoring.

I. Motion to Dismiss
Defendant first argues on appeal that the trial court erred in denying his motion to dismiss all five charges against him for insufficient evidence. The trial court's denial of a motion to dismiss for insufficient evidence is reviewed de novo on appeal. State v. McKinnon, 306 N.C. 288, 298, 293 S.E.2d 118, 125 (1982). A defendant's motion to dismiss should be denied if there is substantial evidence of: (1) each essential element of the offense charged and (2) defendant being the perpetrator of the offense. State v. Scott, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Smith, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). In ruling on a motion to dismiss, "the trial court is required to view the evidence in the light most favorable to the State, making all reasonable inferences from the evidence in favor of the State." State v. Kemmerlin, 356 N.C. 446, 473, 573 S.E.2d 870, 889 (2002). Contradictions and discrepancies in the evidence do not warrant dismissal, but are for the jury to resolve. State v. Powell, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980).

A. First Degree Sexual Offense  Anal Intercourse
Through his first and third assignments of error, defendant contends that the first degree sexual offense charges in 06 CRS 86997 and 06 CRS 86998 should have been dismissed for insufficient evidence. The elements essential to proving first degree sexual offense are that (1) the defendant engaged in a "sexual act"; (2) the victim was 12 years old or less at the time of the act; and (3) the defendant was at least 12 years old and four or more years older than the victim. State v. Griffin, 319 N.C. 429, 433, 355 S.E.2d 474, 477 (1987); N.C. Gen. Stat. § 14-27.4(a)(1) (2007). A "sexual act" denotes "cunnilingus, fellatio, analingus, . . . anal intercourse . . . [or the] penetration, however slight, by any object into the genital or anal opening of another person's body." N.C. Gen. Stat. § 14-27.1(4) (2007). Here, the indictments charged defendant with first degree sexual offense based on "anal intercourse" with Ned. The term "anal intercourse" requires "penetration of the anal opening of the victim by the penis of the male." State v. DeLeonardo, 315 N.C. 762, 764, 340 S.E.2d 350, 353 (1986). Defendant claims that the "State failed to offer sufficient credible evidence that defendant had engaged in the sexual act of anal intercourse with [Ned] . . . ."
At trial, Ned testified that on one occasion, defendant "put his finger into [Ned's] butt" and "then he put his penis in[,]" causing "sharp pain." Ned also testified that on another day in the fall of 2005 defendant put his penis in his anus. When asked directly by the prosecutor whether defendant "put his penis in your anus" on two separate occasions, Ned responded: "Yes." From Ned's testimony, the jury could reasonably conclude that defendant engaged in anal intercourse with Ned on two separate occasions. See Griffin, 319 N.C. at 433, 355 S.E.2d at 477 (holding victim's testimony that "defendant stuck his private parts `up [her] butt'" was sufficient evidence of anal intercourse); State v. Norman, __ N.C. App. __, __, 675 S.E.2d 395, 401 (finding sufficient evidence of anal intercourse where minor victim testified that "[d]efendant `[stuck] his ding-a-ling in my back or my bottom'"), disc. review denied, 363 N.C. 587, 683 S.E.2d 382 (2009).
The fact that Ned testified that defendant put his penis in Ned's "anus" distinguishes the case cited by defendant, State v. Hicks, 319 N.C. 84, 90, 352 S.E.2d 424, 427 (1987), where the Supreme Court held that the victim's "ambiguous" testimony that the defendant "'put his penis in the back of me'" was insufficient evidence of anal intercourse. Moreover, Ned's testimony that defendant engaged in these acts on two different days supports defendant's conviction of two separate counts of first degree sexual offense.
Defendant nonetheless argues that Ned's testimony is "vague" because "[Ned] gave no indication of what he considered his `butt' to be." In both Griffin and Norman, however, our appellate courts held that testimony that the defendant penetrated the victim's "butt" or "bottom" was sufficient to prove anal intercourse. Defendant's argument, more importantly, ignores Ned's testimony that defendant "put his penis in [his] anus." This testimony is unequivocal as to whether defendant engaged in anal intercourse with Ned. These assignments of error are overruled.

B. First Degree Sexual Offense  Fellatio
Defendant also challenges the sufficiency of the evidence with respect to the second count of sexual offense in 06 CRS 86998, which alleged that defendant forced Ned to perform "fellatio" on defendant. Defendant argues that the State failed to offer "sufficient reliable and credible evidence" that defendant engaged in the sexual act of fellatio with Ned.
Ned testified at trial that on one occasion in his bedroom and on another occasion in the doorway between his bedroom and the kitchen, defendant pulled down his pants and forced Ned to perform oral sex on him. Defendant ejaculated both times.
Defendant argues that Ned's testimony is "patently unreliable" because he initially denied that anything happened with defendant and because Ned testified that he "phase[d] out," as if he were "somewhere else" during the incidents. "[T]he testimony of a single witness is adequate to withstand a motion to dismiss when that witness has testified as to all the required elements of the crimes at issue." State v. Whitman, 179 N.C. App. 657, 670, 635 S.E.2d 906, 914 (2006). "The credibility of witnesses is a matter for the jury except where the testimony is inherently incredible and in conflict with the physical conditions established by the State's own evidence." State v. Begley, 72 N.C. App. 37, 43, 323 S.E.2d 56, 60 (1984). Defendant points to nothing in Ned's testimony that is inherently incredible or in conflict with the State's evidence. The weight to be given to Ned's testimony in light of his earlier denial and his statements that he "phase[d] out" during the incidents was a matter of credibility for the jury to resolve, not the trial court.

C. Indecent Liberties  Anal Intercourse
Defendant's next argument is that the indecent liberties charge in 06 CRS 86997 should have been dismissed for insufficient evidence. A defendant is guilty of taking indecent liberties with a minor if the State proves (1) the defendant was at least 16 years of age; (2) the defendant was five years older than the complainant; (3) the defendant willfully took or attempted to take an indecent liberty with the complainant; (4) the complainant was under 16 years of age at the time the alleged act or attempted act occurred; and (5) the action by the defendant was for the purpose of arousing or gratifying sexual desire. State v. Rhodes, 321 N.C. 102, 104-05, 361 S.E.2d 578, 580 (1987); N.C. Gen. Stat. § 14-202.1(a)(1) (2007). As the Supreme Court has explained: "The evil the legislature sought to prevent in this context was the defendant's performance of any immoral, improper, or indecent act in the presence of a child `for the purpose of arousing or gratifying sexual desire.' Defendant's purpose for committing such act is the gravamen of this offense; the particular act performed is immaterial." State v. Hartness, 326 N.C. 561, 567, 391 S.E.2d 177, 180 (1990).
Defendant argues that the charge should have been dismissed because, as the trial court instructed the jury, the anal intercourse that constitutes the indecent liberties charge is the "same act" that forms the basis of the sexual offense charge in 06 CRS 86997. Relying on State v. Laney, 178 N.C. App. 337, 631 S.E.2d 522 (2006), defendant argues that he cannot be convicted of both first degree sexual offense and taking indecent liberties with a minor under the facts established at trial because both offenses are "based on a single transaction." Laney held that two acts  the defendant's touching the victim's breasts and putting his hand down the waistband of her pants  committed during the same instance is insufficient to support two separate convictions of taking indecent liberties. Id. at 340-41, 631 S.E.2d at 525.
Laney is inapposite here because defendant was not charged with two separate counts of indecent liberties, as was the defendant in that case. Instead, defendant was charged in 06 CRS 86997 with one count of sexual offense and one count of indecent liberties, based on the "same act." In State v. Swann, 322 N.C. 666, 677-78, 370 S.E.2d 533, 539-40 (1988), the Supreme Court held that the same act may support convictions for both first degree sexual offense and indecent liberties because "[t]he elements of the two crimes are different." See also State v. Manley, 95 N.C. App. 213, 217, 381 S.E.2d 900, 902 (holding, based on Swann, that "the definitional elements of first-degree sex offense and indecent liberties are different" and thus "defendant's conviction of first-degree sex offense and indecent liberties did not contravene his constitutional protection against double jeopardy"), disc. review denied, 325 N.C. 712, 388 S.E.2d 467 (1989). Defendant's argument is, therefore, overruled.

D. Indecent Liberties  06 CRS 87000
Defendant next contends that the indecent liberties charge in 06 CRS 87000 should have been dismissed because the trial court failed to specify in its instructions to the jury what act by defendant formed the basis of the charge. Although defendant's argument focuses on the trial court's instructions to the jury, defendant neither objected to the instructions at trial nor made the instructions the subject of an assignment of error on appeal. This argument is thus not preserved for appellate review. N.C.R. App. P. 10(b)(1). Defendant, moreover, fails to cite any authority in support of his argument, in violation of N.C. R. App. P. 28(b)(6) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned."). Without citation of authority, defendant's contention is deemed abandoned on appeal. See State v. Elliott, 360 N.C. 400, 427, 628 S.E.2d 735, 753 ("Defendant has assigned multiple instances of error for which there is no argument or supporting authority cited in his brief. Therefore, those assignments of error are taken as abandoned and dismissed."), cert. denied, 549 U.S. 1000, 166 L. Ed. 2d 378 (2006).

II. Rule 404(b) Evidence
Defendant next argues that the trial court erred in admitting under Rule 404(b) of the Rules of Evidence Nancy's testimony that defendant sexually abused her when she was a child. Rule 404(b) provides in pertinent part:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident. . . .
N.C. R. Evid. 404(b).
Rule 404(b) "state[s] a clear general rule of inclusion of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but one exception requiring its exclusion if its only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." State v. Coffey, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990) (emphasis omitted). North Carolina's courts are "markedly liberal in admitting evidence of similar sex offenses by a defendant for the purposes . . . enumerated in Rule 404(b)." State v. Cotton, 318 N.C. 663, 666, 351 S.E.2d 277, 279 (1987).
Here, Nancy testified that she lived with defendant from the time she was eight until she was 12. When Nancy was 10 or 11, defendant came into her bedroom at night on three or four occasions while she was sleeping and tried to put a pickle in her mouth. During one of these instances, defendant also "tried to put his private in [her] mouth"  referring to his erect "penis." Defendant hit her with his hand when she bit his penis. Another time, when Nancy was 11, he came into her room while she was asleep. Defendant was naked with the exception of having a bed sheet over his erect penis. Defendant got on top of Nancy and "tried to put his penis inside of [her] with the bed sheet over it." When Nancy tried to roll over, pretending to be asleep, defendant held her down and put his penis in her vagina. Defendant never said anything during these events, but the next day he would read scripture with Nancy and apologize to her.
The trial court admitted Nancy's testimony to show "some type of plan, scheme or pattern." "[E]vidence of another crime is admissible to prove a common plan or scheme to commit the offense charged[,]" but "the two acts must be sufficiently similar as to logically establish a common plan or scheme to commit the offense charged, not merely to show the defendant's character or propensity to commit a like crime." State v. Willis, 136 N.C. App. 820, 822-23, 526 S.E.2d 191, 193 (2000). Rule 404(b) requires "some unusual facts present in both crimes or particularly similar acts which would indicate that the same person committed both crimes." State v. Moore, 309 N.C. 102, 106, 305 S.E.2d 542, 545 (1983). It is not necessary, however, that factual similarities between the two situations "rise to the level of the unique and bizarre"  only that "the similarities support the reasonable inference that the same person committed both the earlier and the later crimes." State v. Green, 321 N.C. 594, 604, 365 S.E.2d 587, 593, cert. denied, 488 U.S. 900, 102 L. Ed. 2d 235 (1988); accord State v. Everette, 111 N.C. App. 775, 780, 433 S.E.2d 802, 804 (1993) (holding that "[w]here the facts show the crimes were related by facts indicating similar place, time, type of crime, method of perpetration and principals, the evidence is admissible" under Rule 404(b)).
Defendant argues that his "attempted oral and vaginal sex with his granddaughter some ten years earlier does not in the slightest tend to prove a common plan or scheme to engage i[n] oral sex and anal sex with his grandson . . . ." Here, both Ned and Nancy  defendant's grandchildren  testified that they were roughly 10 or 11 years old and living with defendant when he committed the alleged sexual acts. Both the vaginal intercourse with Nancy and the anal intercourse with Ned occurred in the children's bedrooms in defendant's house. Similarly, defendant attempted to engage in oral sex with Nancy while she was in bed and engaged in oral sex with Ned at the foot of his bed. The similarities between the sexual acts are sufficient to make Nancy's testimony admissible under Rule 404(b) for the purpose of showing a common scheme or plan. See State v. Bullock, 178 N.C. App. 460, 468, 631 S.E.2d 868, 874 (2006) (finding evidence was sufficient to show common scheme or plan where two sisters  one 11 and the other 12  testified that defendant, their father, approached them in their bedrooms and had vaginal intercourse with them), disc. review denied, 361 N.C. 222, 642 S.E.2d 708 (2007).
In addition, the fact that the incidents with Ned and Nancy occurred roughly 10 years apart does not necessitate exclusion under Rule 404(b). See State v. Williamson, 146 N.C. App. 325, 334, 553 S.E.2d 54, 60 (2001) ("We conclude the gap in time is not too remote to warrant admission of the evidence under Rule 404(b), given our Supreme Court's liberal treatment of admitting prior evidence of similar sexual offenses, and its express holding [in State v. Frazier, 344 N.C. 611, 615-16, 476 S.E.2d 297, 300 (1996),] that a ten-year gap between incidents is not sufficiently remote in time to preclude admission under 404(b)."), disc. review denied, 355 N.C. 222, 560 S.E.2d 366 (2002). The trial court, therefore, did not err in admitting Nancy's testimony under Rule 404(b). Defendant does not argue on appeal that the admission of her testimony violated Rule 403, nor did he assign error to its admission on this basis. Thus defendant's argument is overruled.

III. Right to Jury Trial
Defendant next argues that he is entitled to a new sentencing hearing because the trial court, as evidenced by its comments on the record, imposed defendant's sentence based on his refusing to accept the prosecutor's plea offer and exercising his right to a jury trial. Where, as here, a defendant's sentence is within the statutory limit, it is "presumed regular and valid." State v. Boone, 293 N.C. 702, 712, 239 S.E.2d 459, 465 (1977). That presumption is not conclusive, however, and may be overcome where "the record discloses that the court considered irrelevant and improper matter in determining the severity of the sentence . . .." Id.
Under N.C. Const. art. I, § 24, "[a] criminal defendant may not be punished at sentencing for exercising th[e] constitutional right to trial by jury." State v. Cannon, 326 N.C. 37, 39, 387 S.E.2d 450, 451 (1990). Thus, "[w]here it can reasonably be inferred from the language of the trial judge that the sentence was imposed at least in part because [the] defendant did not agree to a plea offer by the state and insisted on a trial by jury, [the] defendant's constitutional right to trial by jury has been abridged, and a new sentencing hearing must result." Id. In determining whether the trial judge's remarks reflect improper considerations, the judge's statements must be considered contextually and in their entirety. State v. Tice, 191 N.C. App. 506, 515, 664 S.E.2d 368, 374 (2008).
Defendant points to the following colloquy occurring prior to trial between the trial judge and defendant:
THE COURT: . . . .
You could be facing 28 years in jail on this one count of this first degree sex offense, on just one count 28 years. If you're  if you're found guilty of all three, that's three times the 28.
Now, I'll be perfectly honest with you, I don't know what the facts are, but the likelihood of me running each sentence consecutive; that is, taking indecent liberties, I probably wouldn't do that. Now, I may would [sic] run two of these first offenses, first degree sex offenses consecutive if you were found guilty. So, that means you'll be looking at at last 56 years in jail.
And how old are you, sir?
[DEFENDANT]: I'll be fifty-five in April.
THE COURT: Okay. So, that's tantamount to a life sentence. Now, the State had offered you previously to plead to a B2 at a level  record level III, consolidate everything into one. And, let's see, you got  the most you could get for that or roughly the most, you're looking at 18 years, no more that 18 years.
Now, if the State were to place that plea back on the table, would you be interested in accepting that plea? Eighteen years versus 56 years roughly? You know, I don't know exactly what I would give you, but you could very well be looking at 56 years and that's not giving you all the time that you could be given. So  and they offered a plea where you only get 18 years in jail.
Are you interested in that, Mr. Zeiglar?
[DEFENDANT]: No, sir; because if I 
THE COURT: You don't  you don't have to give me a[n] explanation  you know, don't say anything that, you know, that could be held against you. I just need to know yes or no, and I just want to make sure you understood what's going on here. And I'm sure your attorney has gone over all of this with you. It's your decision to make. He may have advised you, Hey, don't want to take this plea based upon the assessment of the facts in the case due to your best interest, but ultimately he's duty bound to try the case if the plea hasn't been worked out, it's not something acceptable to you.
So, you want to go to trial?
[DEFENDANT]: Uh-huh, I'm going to trial.
Defendant maintains that the trial judge's statements sent a "message" to defendant: "'[I]f you don't take the plea offered to you by the State, and you are found guilty, I will sentence you on two of the B1 felonies consecutively rather than concurrently.'" In support of his position, defendant relies on State v. Hueto, __ N.C. App. __, __, 671 S.E.2d 62, 67-69 (2009), where this Court held that the trial judge's pre-trial comments supported a reasonable inference that the judge sentenced the defendant based on the defendant's exercise of his right to a jury trial. In Hueto, the trial judge told the defendant that if he elected to go to trial the judge "w[ould] not be able to give [defendant] the help that [he] c[ould] probably give [defendant] at this point" and that he would be "compel[led]" to impose at least two consecutive sentences if defendant was found guilty. Id. at __, 671 S.E.2d at 68.
Here, in contrast to Hueto, the trial judge's comments do not indicate that he would "help" defendant if he pled guilty or that he would be "compel[led]" to impose a more severe sentence if defendant insisted on going to trial and the jury found him guilty. Although the trial judge indicated that he "may would" impose consecutive sentences, he qualified his comment by noting that he did not "exactly know what [he] would give [defendant]" as he did not "know what the facts [we]re." A review of the trial judge's statements in context indicates that he was ensuring that defendant was fully informed of the risk involved in rejecting the plea deal and insisting on a jury trial. The trial judge explained the risks of proceeding to trial: foregoing a consolidated sentence of "no more that 18 years" while being exposed to potentially three consecutive 28 year sentences for just the first degree sexual offense charges. The record reveals that the trial judge's questions were intended to ensure that defendant fully realized the possible ramifications of rejecting the plea offer. See Tice, 191 N.C. App. at 513, 664 S.E.2d at 373 (concluding trial judge's comments did not reflect improper consideration of defendant's exercise of his right to jury trial where record indicated that judge's comments were intended to "ensur[e] that defendant was fully informed of the risk he was taking" by insisting on trial).

IV. Satellite-Based Monitoring
Defendant also challenges the trial court's order imposing lifetime SBM, arguing that: (1) under the Sixth Amendment, the jury, rather than the trial court, was required to make the findings necessary to impose the monitoring because lifetime SBM constitutes punishment beyond the presumptive range; and (2) he is entitled to a new sentencing hearing because the trial court failed to pronounce this portion of his sentence in defendant's presence in open court. Review of the record on appeal, however, indicates that this Court does not have jurisdiction to review the trial court's order.
Defendant gave notice of appeal from his convictions in open court after being sentenced. Thus, this Court has appellate jurisdiction to review his convictions. See N.C. R. App. P. 4(a)(1) (providing that criminal defendant may appeal judgment or order of trial court by "giving oral notice of appeal at trial"). The trial court, however, entered its SBM order after defendant gave oral notice of appeal in open court from his convictions. Because defendant gave notice of appeal from his convictions prior to entry of the SBM order, defendant was required to file a separate notice of appeal from the subsequent SBM order. See State v. Hagans, 188 N.C. App. 799, 805-06, 656 S.E.2d 704, 708-09 (holding appellate court lacked jurisdiction to review post-conviction motion for appropriate relief where defendant failed to give notice of appeal from trial court's order denying motion), disc. review denied, 362 N.C. 511, 668 S.E.2d 344 (2008); State v. McCoy, 171 N.C. App. 636, 638, 615 S.E.2d 319, 320 (recognizing that requirements of Rule 4 for giving notice of appeal are "jurisdictional and cannot simply be ignored by this Court"), appeal dismissed, 360 N.C. 73, 622 S.E.2d 626 (2005).
"Without proper notice of appeal, the appellate court acquires no jurisdiction and neither the court nor the parties may waive the jurisdictional requirements even for good cause shown under Rule 2." Bromhal v. Stott, 116 N.C. App. 250, 253, 447 S.E.2d 481, 483 (1994), disc. review denied in part, 339 N.C. 609, 454 S.E.2d 246, aff'd in part, 341 N.C. 702, 462 S.E.2d 219 (1995). This Court, therefore, lacks jurisdiction to review the SBM order. See Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co., 362 N.C. 191, 197, 657 S.E.2d 361, 365 (2008) ("A jurisdictional default . . . precludes the appellate court from acting in any manner other than to dismiss the appeal."). Defendant also has not sought review of the SBM order through a petition for writ of certiorari. Defendant's contentions regarding the trial court's SBM orders are dismissed.
No Error in part; dismissed in part.
Judges BRYANT and JACKSON concur.
Report per Rule 30(e).
NOTES
[1] The pseudonym "Ned" is used throughout this opinion to protect the privacy of the minor and for ease of reading.
[2] The pseudonym "Nancy" is used to protect the minor's privacy.