STATE OF NORTH CAROLINA v. BERNARDO MURCIA HUETO

No. COA08-503

(Filed 20 January 2009)

**1. Appeal and Error— preservation of issues—objection on hearsay grounds—appeal on relevancy—assignment of error dismissed**

An assignment of error to certain evidence in a statutory rape case was dismissed where defendant argued that the evidence was irrelevant, but the objection at trial appeared to be on hearsay grounds.

**2. Rape— time and number of incidents—variance between indictment and evidence—not material**

The trial court did not err in a first-degree rape and statutory rape prosecution by denying defendant's motion to dismiss one of the charges where the indictment alleged two counts in August

and the victim was uncertain as to the number of rapes in August. The date given in the indictment is not an essential element of the crime charged, and there was substantial evidence that defendant had sex with the victim at least six times between June and 12 August, including at least four times in July.

**3. Sentencing— punishment for pleading not guilty—pretrial remarks—reasonable inference**

Consecutive sentences for multiple counts of first-degree rape and statutory rape were remanded where it could be reasonably inferred from the court's pretrial remarks that defendant's exercise of his right to a jury trial was considered in issuing consecutive sentences, even though the sentences were within the trial court's discretion and the court attempted to avoid inhibiting defendant's right to plead not guilty.

Appeal by Defendant from judgments entered 12 October 2007 by Judge John O. Craig, III, in Randolph County Superior Court. Heard in the Court of Appeals 1 December 2008.

*Attorney General Roy Cooper, by Assistant Attorney General Margaret A. Force, for the State.*

*Jarvis John Edgerton, IV, for Defendant.*

STEPHENS, Judge.

Defendant appeals from eight judgments entered following jury verdicts finding him guilty of two counts of first-degree rape and six counts of statutory rape. We conclude that Defendant received a fair trial, free of error, but we remand this case for re-sentencing.

*Background*

The evidence at trial tended to show that in the spring of 2004, Defendant and his brother moved into Defendant's girlfriend's home where she lived with her three daughters, "Avery," "Bernice," and "Chloe."[1] Defendant began having sex with Chloe in June 2004 and had sex with her between one and three times a week until August 2004. At that time, Chloe was fourteen years old, and Defendant was twenty-five years old. Defendant stopped having sex with Chloe around 12 August 2004, the day Chloe discovered she was pregnant.[2]

---

1. We use pseudonyms to protect the girls' privacy and for ease of reading.

2. Chloe gave birth to a child on 12 March 2005. Defendant's brother was the child's father.

**STATE v. HUETO**

[195 N.C. App. 67 (2009)]

Defendant began having sex with Chloe again in September 2004 and had sex with her once or twice a week for a few months thereafter.

On 21 February 2005, Defendant had sex with Bernice, who, at that time, was twelve years old. That day, Defendant penetrated Bernice and had sex with her for a few minutes before becoming "frustrated[.]" Defendant stopped having sex with her, discarded his condom in the fireplace, put on another condom, and began having sex with Bernice again. Defendant stopped having sex with Bernice after a few more minutes when Bernice's mom and sister came home.

Later that day, Bernice told her mom that Defendant had sex with her, and Bernice and Chloe went with their grandmother to Chloe's scheduled prenatal checkup. Bernice's grandmother asked Chloe's doctor to examine Bernice "to see if [she] was okay." When Chloe's doctor refused to examine Bernice, the grandmother drove the girls to the "family doctor[,]" Dr. Slatosky. Dr. Slatosky refused to examine Bernice, advised the grandmother to take Bernice to the emergency room, and contacted law enforcement. The grandmother did not take Bernice to the emergency room.

Randolph County's Sheriff's Office and Department of Social Services began investigations, and Defendant was arrested on 23 February 2005. Defendant was indicted on two counts of first-degree rape for having sex with Bernice, and on six counts of statutory rape for having sex with Chloe: two counts each for June, August, and September 2004. Defendant did not present any evidence at trial, and the jury convicted Defendant of all charges. The trial court sentenced Defendant to eight consecutive sentences totaling 1384-1736 months in prison. Defendant appeals.

*Analysis*

At the outset, we note that assignments of error set out in the record on appeal but not brought forward in Defendant's brief are deemed abandoned. N.C. R. App. P. 28(b)(6).

I. Bernice

[1] By his fourth assignment of error, Defendant argues that he is entitled to a new trial on the two charges of raping Bernice because the trial court erroneously admitted the following testimony of Dr. Slatosky into evidence:

Q.  . . . I want to ask you if you recall the events of February [2005] involving a family which would have included [Bernice] that may have come to your office?

A.  A vague recollection.

Q.  Okay. Did you actually talk to them or no?

A.  The initial contact, no, sir. Lynette Hamilton, my medical assistant—

Q.  Okay.

A.  —had spoken to—

Q.  Okay.

A.  —one of the family members and then relayed a message to me—

Q.  Okay. All right.

A.  —about—

Q.  Based on what [Lynette] told you, and I don't want you to tell me what she said, but based on what she told you, what did you do?

A.  I asked her to go ask the family member who had approached her about the situation to take her to the emergency room so that they could do some evidence collection, since we are not prepared to do evidence collection in our clinical setting. And then I went to my office and called law enforcement and alerted them.

Q.  Now Doctor, why did you call law enforcement?

A.  Well, the—Lynette said that there was a situation with [Bernice] where there was an adult male that had had intercourse with her.

[DEFENSE COUNSEL]: Your Honor, please, I'm going to object as to what Lynette said.

[PROSECUTOR]: Offered for a non-hearsay purpose of why he called the police.

THE COURT: All right. I'll allow that one question for the limited purpose of the non-hearsay basis.

Q. . . . I'm sorry. Go ahead, Doctor.

A. So in my mind that constituted a crime, so I called the police.

Q. Well, you can [answer] the question. The Judge said you can answer the question. So tell us what Lynette told you.

A. Lynette told me that [Bernice's] grandmother had come in and talked to her and said that [Bernice] had been sexually assaulted by a male that was in their household. I didn't get a name.

Q. Okay.

A. Don't know—Didn't know anything else about it, so I instructed her to take her to the emergency there and then immediately, and then I alerted the authorities.

Q. Now why did you take it upon yourself to alert the authorities[?]

A. Because it sounded like that it was a criminal matter.

Defendant argues that evidence of what the medical assistant told Dr. Slatosky was irrelevant and inadmissible under N.C. Gen. Stat. § 8C-1, Rules 401 and 402. Alternatively, Defendant argues that this evidence was unduly prejudicial and inadmissible under N.C. Gen. Stat. § 8C-1, Rule 403.

Initially, we agree with the State that Defendant did not preserve this argument for appeal. Defendant never stated to the trial court that he objected to Dr. Slatosky's testimony on relevancy grounds, and the specific grounds of Defendant's objection were not apparent from the context. N.C. R. App. P. 10(b)(1). In fact, it appears from the context that Defendant objected to Dr. Slatosky's testimony "as to what Lynette said[]" on hearsay grounds. The State, apparently understanding Defendant's objection as such, responded that it was offering the evidence for a non-hearsay purpose, and the trial court admitted the testimony for "the limited purpose of the non-hearsay basis." Defendant did not argue to the trial court that this evidence was irrelevant or unduly prejudicial. Accordingly, this assignment of error is dismissed. *Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.*, 362 N.C. 191, 657 S.E.2d 361 (2008).

Even assuming *arguendo* that the trial court erred in admitting Dr. Slatosky's testimony, any error was harmless beyond a reasonable doubt. "The erroneous admission of evidence requires a new trial

only when the error is prejudicial." *State v. Chavis*, 141 N.C. App. 553, 566, 540 S.E.2d 404, 414 (2000) (citing *State v. Locklear*, 349 N.C. 118, 149, 505 S.E.2d 277, 295 (1998), *cert. denied*, 526 U.S. 1075, 143 L. Ed. 2d 559 (1999)). "To show prejudicial error, a defendant has the burden of showing that 'there was a reasonable possibility that a different result would have been reached at trial if such error had not occurred.' " *Id.* (quoting *Locklear*, 349 N.C. at 149, 505 S.E.2d at 295). The evidence against Defendant was substantial. Bernice testified that Defendant twice had sex with her, and her testimony was corroborated by other testimony and physical evidence. The physical evidence consisted of a used condom given to an investigator on 24 February 2005 by Bernice's mom. The condom contained DNA which matched the DNA of both Defendant and Bernice. In light of this evidence, we perceive no reasonable possibility that the jury would have reached a different result if Dr. Slatosky's testimony had not been admitted. Accordingly, even if the trial court did err in admitting Dr. Slatosky's testimony, Defendant is not entitled to a new trial on the charges that he raped Bernice. Defendant's assignment of error is overruled.

## IV. Chloe

[2] By his first assignment of error, Defendant argues that the trial court erred in denying Defendant's motion to dismiss one of the charges that he raped Chloe because the State presented insufficient evidence that Defendant had sex with Chloe twice in August 2004. Defendant was indicted on six counts of statutory rape for having sex with Chloe: two counts each for June, August, and September 2004. At trial, Chloe testified as follows:

Q. . . . Can you tell us what happened between you and [Defendant] in August?

A. In August is when I found out that I was pregnant, and after I found out I was pregnant he stopped.

Q. Okay. Explain that to me.

. . . .

A. When I found out I was pregnant he didn't have sex with me anymore.

Q. How many times—When did you find out in August that you were pregnant?

A. I think it was around the 12th. It was sometime just like a week or two weeks before school started back.

Q. And during those two weeks of August, and I know you don't know exactly, could you estimate how many times you had sex with him in August?

A. I don't know. It's hard to say.

Q. Did you have sex with him at all in August?

A. I—At the very first of August I did. I can't remember exactly how much though because I can't remember exactly what date we found out.

Q. Okay. And none in July?

A. Yes, in July.

Q. You did have sex with him in July?

A. He had sex with me between June and the beginning of August when I found out.

Q. So June, July, and the beginning of August?

A. Yes, sir.

. . . .

Q. Okay. Estimate for me, if you would, and I know you don't know exactly, estimate for me how many times when you were fourteen years old that you had sex with [Defendant].

. . . .

A. It's—Between June and the first of August it happened maybe once to maybe three times a week. And then between the [sic] September, around September and October, around that time span it was maybe once a week, twice a week.

Defendant argues that this testimony, while sufficient to show that he raped Chloe once in August, is insufficient to show that he raped Chloe twice in August. Defendant's argument is meritless.

A motion to dismiss on the ground of sufficiency of the evidence raises for the trial court the issue whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. The existence of substantial evidence is a question of law for the trial

court, which must determine whether there is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. The court must consider the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference from that evidence. The evidence may be direct, circumstantial, or both.

*State v. Barden,* 356 N.C. 316, 351, 572 S.E.2d 108, 131 (2002) (quotation marks and citations omitted), *cert. denied,* 538 U.S. 1040, 155 L. Ed. 2d 1074 (2003). A defendant is guilty of statutory rape "if the defendant engages in vaginal intercourse or a sexual act with another person who is 13, 14, or 15 years old and the defendant is at least six years older than the person, except when the defendant is lawfully married to the person." N.C. Gen. Stat. § 14-27.7A(a) (2007). "[T]he date given in the bill of indictment is not an essential element of the crime charged and the fact that the crime was in fact committed on some other date is not fatal." *State v. Norris,* 101 N.C. App. 144, 151, 398 S.E.2d 652, 656 (1990) (citing *State v. Whittemore,* 255 N.C. 583, 592, 122 S.E.2d 396, 403 (1961)), *disc. review denied,* 328 N.C. 335, 402 S.E.2d 843 (1991). "[A] judgment should not be reversed when the indictment lists an incorrect date or time if time was not of the essence of the offense, and the error or omission did not mislead the defendant to his prejudice." *State v. Stewart,* 353 N.C. 516, 517, 546 S.E.2d 568, 569 (2001) (quotation marks and citation omitted).

Assuming *arguendo* that Chloe's testimony was insufficient to establish that Defendant had sex with her twice in August, we nevertheless conclude that the State presented substantial evidence that Defendant had sex with Chloe at least six times between June 2004 and 12 August 2004, including at least four times in July. The variance between the period of time in the indictment within which the offenses occurred and the State's evidence at trial was not material and did not deprive Defendant of the opportunity to adequately present his defense. *Stewart,* 353 N.C. at 517, 546 S.E.2d at 569. This assignment of error is overruled.

## V. Sentencing

[3] By his second assignment of error, Defendant argues that he is entitled to a new sentencing hearing because the trial court punished Defendant for exercising his right to a jury trial. Before trial began on 9 October 2007, the trial court addressed Defendant as follows:

THE COURT: Senor Hueto, this is the first time you have seen me, and this may be the only opportunity that I will have to

speak with you before the trial begins. You are probably not familiar with our system of jury trials in America, and I want to explain a little bit to you about how the jury trial works and my role in the case. I suppose the best way to describe my role is to look upon me as the referee in a football match. Do you like football? Soccer, we call it?

. . . .

THE COURT: During the trial I'm like the referee in a football match. I decide whether someone is offside or I might even issue a yellow card in the case. But the case is tried by the attorneys and then there is a jury of twelve people who listen to everything and they are the ones that make the decision at the end of the case about whether you are convicted of any charges or whether you are found not guilty. My real role, and from your perspective the important part of my role, comes into play if the jury convicts you of any charges, because it is up to me to decide what your sentence will be. And I have looked at the file and I have talked with [your attorney] and with . . . the prosecutor, and in all seriousness I am very concerned about the evidence against you and about your chances of winning this trial and being found not guilty of all charges. This is the point in the trial where you still possibly have some control over the outcome of the trial or control over your fate, because the attorneys have indicated to me that they are willing to trust me to sentence you at this point fairly if you were to decide to plead guilty to some or all of the charges. And I would see to it that I gave you a fair sentence but one that would most likely be a lesser amount of time than if you are convicted. And I'll give you an example. If you are convicted of one of the felonies, which is a B-1 felony, I would have to sentence you to that—to that amount, and it would probably be in the range of fourteen and a half . . . years or maybe a little bit more, not much more. And of course you would also get credit for the two and a half . . . years that you have spent in jail awaiting the trial. But if you are convicted of a B-1 felony against both of the young girls I would most likely be compelled to give you sentences for two . . . B-1 felonies. So all of a sudden, if you decide to go to a jury trial and the jury convicts you of charges against both of these girls, your amount of time is going to be much greater in terms of what your sentence would be, because I would feel that if the jury decided you were guilty as to both of these girls I would have to give you more than one B-1 felony sentence,

I would have to give you at least two. Which all of a sudden means that you would be looking at about thirty . . . years in prison. Now the District Attorney has indicated to me that he would be willing to let me, if you are willing to plead guilty to one . . . B-1 felony, that he would be willing to put the sentencing [in] my hands and trust me to reach a fair sentence that everyone would be satisfied with. And I'm willing to do that for you. But if you say no, I want to have my jury trial, and let me emphasize that you have every right to a jury trial and to let twelve people decide your case, but if you say you want to do that, then I will not be able to give you the help that I can probably give you at this point. And you are putting your faith in the hands of twelve strangers who do not know you, who do not know your situation, and if they find you guilty of the charges against both of these young girls, it will compel me to give you more than a single B-1 sentence, and I would have to give you at least two . . . and maybe more.

. . . .

THE COURT: All right. You are twenty-eight years old. If I had to sentence you to around thirty years, you can do the math, you would know that you would be fifty-eight years old or almost sixty years old when you got out of prison. If you decide to choose to plead guilty to at least just one of these felonies you are going to get out in a lot less time. You will still be a relatively young man when you get out of prison. But the worst risk of all is that after hearing the evidence the jury convicts you of multiple B-1 felonies then it might compel me to give you even more time than that, and you have the possibility of spending your entire life in prison. Now I want you to make the right choice, and I'm not trying to pressure you in any way into giving up your right to a jury trial if you insist upon it. . . .

After the jury returned its verdict, the trial court briefly recessed before conducting the sentencing hearing. Before recessing, the trial court asked the Prosecutor if the State waived its intent to seek aggravating factors and its intent to have Defendant adjudicated a sexually violent predator, "in light of my intention to give [Defendant] what would amount to more than a life sentence[.]" During the sentencing hearing, the trial court stated as follows:

To you, Senor Hueto, I regret that you do [sic] not choose to take the offer that had been made to you at the beginning of

the trial to plead guilty for a lesser sentence. And I had told you that I did not know what I would . . . give in terms of a sentence but that I would await the jury's verdict. I believe the jury has spoken very clearly on how convinced they are of your guilt as to all of these charges. And based upon the jury verdicts as to each of these felonies, I intend to give you consecutive sentences for each of them.

The trial court imposed eight consecutive sentences totaling 1384-1736 months in prison. Defendant contends it can reasonably be inferred from the trial court's pre-trial comments that the sentence was imposed at least in part because Defendant insisted on a trial by jury, and Defendant asks this Court to remand this case for another sentencing hearing.

A sentence within statutory limits is "presumed to be regular." *State v. Boone*, 293 N.C. 702, 712, 239 S.E.2d 459, 465 (1977). Where the record, however, reveals the trial court considered an improper matter in determining the severity of the sentence, the presumption of regularity is overcome. *Id.* It is improper for the trial court, in sentencing a defendant, to consider the defendant's decision to insist on a jury trial. *State v. Cannon*, 326 N.C. 37, 39, 387 S.E.2d 450, 451 (1990). Where it can be reasonably inferred the sentence imposed on a defendant was based, even in part, on the defendant's insistence on a jury trial, the defendant is entitled to a new sentencing hearing. *Id.*

*State v. Peterson*, 154 N.C. App. 515, 517, 571 S.E.2d 883, 885 (2002).

We conclude that it can be reasonably inferred from the trial court's pre-trial remarks that, in sentencing Defendant, the court improperly considered Defendant's exercise of his constitutional right to demand a trial by jury. The trial court advised Defendant as follows:

Now the District Attorney has indicated to me that he would be willing to let me, if you are willing to plead guilty to one . . . B-1 felony, that he would be willing to put the sentencing [in] my hands and trust me to reach a fair sentence that everyone would be satisfied with. And I'm willing to do that for you. But if you say no, I want to have my jury trial, and let me emphasize that you have every right to a jury trial, and to let twelve people decide your case, but if you say you want to do that, *then I will not be able to give you the help that I can probably give you at this*

*point*. And you are putting your faith in the hands of twelve strangers who do not know you, who do not know your situation, and *if they find you guilty of the charges against both of these young girls, it will compel me to give you more than a single B-1 sentence, and I would have to give you at least two . . .* and maybe more.

(Emphasis added.) The emphasized portions of the court's comments were inaccurate statements of the law. N.C. Gen. Stat. § 15A-1340.15(b) (2007) ("If an offender is convicted of more than one offense at the same time, the court *may* consolidate the offenses for judgment and impose a single judgment for the consolidated offenses.") (emphasis added). We are of the opinion that the trial court's decision to impose eight consecutive sentences was partially based on Defendant's decision to plead not guilty. Accordingly, this case must be remanded for re-sentencing. *State v. Boone*, 293 N.C. 702, 711-13, 239 S.E.2d 459, 465 (1977).

In reaching this result, we are cognizant that the trial court acted within its discretion in imposing consecutive sentences. *See* N.C. Gen. Stat. § 15A-1340.15(a) (2007) ("This Article does not prohibit the imposition of consecutive sentences."). Moreover, it is evident that the trial court carefully attempted not to inhibit Defendant's right to plead not guilty. Indeed, "[t]he trial judge may have sentenced defendant quite fairly in the case at bar[.]" *Boone*, 293 N.C. at 712, 239 S.E.2d at 465 (quotation marks omitted). Nonetheless, we also conclude "there is a clear inference that a greater sentence was imposed because defendant did not accept a lesser plea proffered by the State." *Id.*

NO ERROR IN TRIAL.

REMANDED FOR RE-SENTENCING.

Chief Judge MARTIN and Judge WYNN concur.