STATE OF NORTH CAROLINA v. GENE WAYNE HAYMOND

No. COA09-1030

(Filed 6 April 2010)

**1. Criminal Law— motion to suppress—search warrant—sufficient probable cause**

The trial court did not err in denying defendant's motion to suppress evidence seized pursuant to a search warrant because, even considering allegedly material facts which defendant contended were intentionally omitted from the application for the warrant, the application was sufficient to establish probable cause to believe the stolen items listed would be found in defendant's home.

**2. Criminal Law— motion to suppress—search warrant—items not listed—plain view doctrine**

The trial court did not err in denying defendant's motion to suppress certain items obtained during a search of his residence that were not listed on the search warrant because the police were given consent by the owner of the residence to search some of the items to determine if they were stolen and the remaining items were admissible under the plain view doctrine.

**3. Criminal Law— defendant's right to testify—not impermissibly chilled**

The trial court did not impermissibly chill defendant's right to testify in his own defense. The trial court's instruction that statements made by defendant at a hearing concerning a plea agreement could be used against him at trial if he testified was not erroneous as the statements were not made during a hearing on a motion to suppress and were not made during the course of plea negotiations. Furthermore, the trial court did not err in concluding that defendant's statements were confessions that could be used against him at trial.

**4. Criminal Law— motion to dismiss—sufficiency of the evidence—breaking or entering**

The trial court erred by denying defendant's motion to dismiss three charges of breaking or entering as the State failed to offer sufficient evidence that defendant either broke or entered the three residences. The trial court did not err in denying defendant's motion to dismiss a fourth charge of breaking or enter-

ing as the State presented sufficient evidence that defendant entered the fourth residence.

**5. Sentencing— reasonable inference—impermissibly based on defendant's insistence on jury trial**

It could be reasonably inferred from the trial court's statements that it impermissibly sentenced defendant based, at least in part, on defendant's decision to refuse the State's plea offer. Defendant was entitled to a new sentencing hearing.

Appeal by defendant from judgments signed 13 August 2008 by Judge Henry E. Frye, Jr. in Wilkes County Superior Court. Heard in the Court of Appeals 11 January 2010.

*Roy Cooper, Attorney General, by Gerald K. Robbins, Special Deputy Attorney General, for the State.*

*Staples Hughes, Appellate Defender, by Charlesena Elliott Walker, Assistant Appellate Defender, for defendant-appellant.*

MARTIN, Chief Judge.

Defendant was charged in true bills of indictment returned by the Wilkes County Grand Jury with the following offenses:

07 CRS 881    Count I. Felonious Breaking or Entering of a building occupied by William Pelon in violation of N.C.G.S. § 14-54(a).

Count II. Felonious Larceny of William Pelon's property pursuant to the breaking or entering in violation of N.C.G.S. § 14-72(b)(2).

08 CRS 1474    Felonious Possession of stolen property belong to William Pelon in violation of N.C.G.S. § 14-71.1

07 CRS 886    Count I. Felonious breaking or entering of a building occupied by Jeffrey Ritch in violation of N.C.G.S. § 14-54(a).

Count II. Felonious Larceny of Jeffrey Ritch's property pursuant to the breaking or entering in violation of N.C.G.S. § 14-72(b)(2).

08 CRS 1470    Felonious Possession of stolen property belonging to Jeffrey Ritch in violation of N.C.G.S. § 14-71.1.

**STATE v. HAYMOND**

[203 N.C. App. 151 (2010)]

07 CRS 50460    Count I. Felonious breaking or entering of a building occupied by Sherry Gambill in violation of N.C.G.S. § 14-54(a).

Count II. Felonious Larceny of Sherry Gambill's property pursuant to the breaking or entering in violation of N.C.G.S. § 14-72(b)(2).

08 CRS 1472    Felonious Possession of stolen property belonging to Sherry Gambill in violation of N.C.G.S. § 14-71.1.

07 CRS 50466    Count I. Felonious breaking or entering of a building occupied by Lowe Fur and Herb, Inc. in violation of N.C.G.S. § 14-54(a).

Count II. Felonious Larceny pursuant to the breaking or entering of personal property belong to Lowe Fur and Herb, Inc., Arthur Lowe, and Arthur Lowe, Jr. in violation of N.C.G.S. § 14-72(b)(2).

Count III. Felonious safecracking in violation of N.C.G.S. § 14-89.1.

08 CRS 1475    Felonious Possession of stolen property belonging to Lowe Fur and Herb, Inc. in violation of N.C.G.S. § 14-71.1.

08 CRS 1471    Felonious Possession of stolen property belonging to Robert Mittet in violation of N.C.G.S. § 14-71.1.

08 CRS 1473    Felonious Possession of a Firearm by a Felon in violation of N.C.G.S. § 14-415.1.

08 CRS 108    Attaining the status of an Habitual Felon in violation of N.C.G.S. § 14-7.1.

Defendant appeared, with counsel, before the trial court at a hearing on 7 January 2008, at which time the State offered defendant a plea arrangement. Defendant requested to address the court, but before allowing him to do so, the trial court advised defendant that any statement made by him could be used against him. Defendant initially requested a continuance in order to employ different counsel, and then made statements to the court in which he admitted complicity and asked the trial court, in light of his cooperation with the authorities, to impose a lesser sentence than that offered by the prosecutor. The trial court refused to do so and advised defendant as to the consequences of accepting or rejecting the plea arrangement offered by the State. Defendant was given a further opportunity to

discuss the plea arrangement with his counsel over the evening recess. On the following day, defendant rejected the plea arrangement. Defendant subsequently waived his right to the assistance of counsel and proceeded *pro se.*

Defendant moved to suppress all evidence seized as a result of a search by law enforcement officers, pursuant to a search warrant, of a residence at 515 Corporation Street, Wilkesboro, North Carolina. Defendant alleged that the application for issuance of the search warrant was insufficient to establish probable cause for its issuance.

The evidence at the suppression hearings tended to show that in January 2007, Detective Peyton Colvard ("Detective Colvard") of the Ashe County Sheriff's Department was investigating a break-in of New River Outfitters and larceny of items therein, which occurred in late December 2006 or early January 2007. On 19 January 2007, while processing the scene for latent fingerprints, Detective Colvard found a business card and vehicle registration in the leaves outside the back door of New River Outfitters. Both items contained defendant's name and the address 515 Corporation Street, Wilkesboro, North Carolina. After discussing this evidence with other officers, Detective Colvard recalled that defendant had been involved in prior break-ins in Ashe County. Detective Colvard then called Captain John Summers ("Captain Summers") of the Wilkes County Sheriff's Department and asked him to ride by the address shown on the cards, which was in Wilkes County, to see if he could identify any items that had been stolen from New River Outfitters. When Captain Summers rode by the house, the only item he spotted was a stainless steel grill sitting on the porch.

When Detective Colvard heard about the grill, he recalled that a stainless steel grill had been taken from the summer home of Randy Miller ("Mr. Miller") in mid-December 2006. Suspecting the grill spotted on the porch of the house might be Mr. Miller's, Detective Colvard contacted Mr. Miller and requested that he drive by the house to see if he could identify it. When Mr. Miller drove by the house, he was "80 percent sure" the grill on the porch was his. On 22 January 2007, Detective Colvard took Mr. Miller back to the house. On this occasion, both Detective Colvard and Mr. Miller got out of the car and walked through the yard to the porch. At this point, Mr. Miller positively identified the grill as the one stolen from his vacation home.

Detective Colvard then applied for a search warrant for 515 Corporation Street, Wilkesboro, North Carolina. In his Probable

Cause Affidavit, Detective Colvard provided the magistrate with the information concerning the discovery of defendant's business card and vehicle registration at New River Outfitters. He also indicated that he had "observed a coastal stainless steel grill on [defendant's] side porch" and that "this grill matched the description of a grill stolen on December 23, 2006." As additional information, Detective Colvard indicated that the victim "identified the grill as being his" after going by defendant's house. According to Detective Colvard, "[t]he victim was certain of this because of a black bungee cord that he had applied to the grill." Finally, Detective Colvard indicated his familiarity with defendant's prior convictions for breaking or entering. Based on this information, the magistrate issued a search warrant for defendant's home, authorizing Detective Colvard to search for the grill and various items stolen from New River Outfitters.

Soon after obtaining the search warrant, Detective Colvard contacted Detective William David Carson ("Detective Carson") to help execute the search warrant. Since defendant's home was located in Wilkesboro, Lieutenant Rhodes of the Wilkesboro Police Department was called to assist in the search as well. When the detectives arrived, no one was at home. They attempted to contact Dawn Matthews ("Ms. Matthews"), the owner of the house, but could not get in touch with her. They then called the number on the business card found at New River Outfitters, and defendant answered. They told defendant they had a warrant to search his house and instructed him to return to his home. Two hours later, defendant arrived at the house, and Detective Colvard served him with the search warrant. Defendant read over the search warrant and indicated that "almost all" of the items on the search warrant were in the house.

Defendant let the officers into the house. The officers searched various rooms in the house, including the basement and the kitchen. They found many of the items identified on the search warrant. They also found numerous other items that were identified as items taken during various reported break-ins in Wilkes County. In the weeks following the search, defendant recovered and returned various other stolen items to the officers, including rifles and parts of a safe which had all been stolen from Lowe Fur and Herb, Inc. Some of the items recovered were determined to be those taken during break-ins of William Pelon's ("Mr. Pelon") residence, Jeffrey Ritch's ("Mr. Ritch") residence, Sherry Gambill's ("Ms. Gambill") residence, and the Lowe Fur and Herb, Inc. business. A computer was found that was determined to have been stolen from Robert Mittet ("Mr. Mittet").

The trial court concluded that the application for the search warrant was sufficient to establish probable cause to search the residence for evidence relating to the Ashe County break-ins and that all of the other items seized, relating to the Wilkes County break-ins, were in plain view of the officers, with the exception of a television set which the officers moved in order to ascertain a serial number and some clothing which the officers found in closed drawers. Thus, the motion to suppress was denied except as to the television and the clothing, which were excluded.

In addition, defendant moved to suppress evidence of a letter dated 9 November 2007 which he directed to an assistant district attorney, various statements which he made to police officers during both the search of his house and plea discussions, and the statements which he made during the 7 January 2008 court appearance. The trial court ruled that the letter and statements made by defendant during plea discussions were inadmissible; however, the court ruled that defendant's statements made during the search were admissible because defendant was not under arrest at the time they were made, requiring no *Miranda* warning. The statements made by defendant at the 7 January 2008 hearing were also ruled admissible but only for impeachment purposes.

The State's evidence at trial was substantially the same as Detective Colvard's testimony with respect to his investigation of the New River Outfitters break-in and the subsequent search and seizure of stolen items from defendant's residence. Mr. Pelon testified that he owned a second home in Wilkes County and that he was having some remodeling work done on the house in June 2006. In that month, the house was broken into and personal property belonging to Mr. Pelon, as well as some tools belonging to his contractor, were stolen. The State offered evidence that a number of the stolen items were found at defendant's home, and others at the home of Jeremy Ebersole, a co-defendant who was tried separately.

Ms. Gambill testified that her home was broken into on or about 15 August 2006 and that a Jen-Air stove, a lawnmower and other personal property was taken. The State offered evidence that the stove was recovered from defendant's home and that defendant himself returned the lawn mower to the Sheriff's department. Daniel Richter testified that he and defendant went to Ms. Gambill's house; Richter went into the house through either a door or a window and took a Jen-Air stove, riding lawnmower, a ladder and some hoses. The items

STATE v. HAYMOND

[203 N.C. App. 151 (2010)]

were quickly loaded into defendant's van and they went back to defendant's house, where defendant paid Richter $250.

Richter also testified that he broke into Mr. Mittet's house in June 2006 and took a laptop computer, which he sold to defendant. Richter testified that he told defendant the computer had been stolen.

Sometime during August 2006, a vacation home owned by Mr. Ritch was broken into and various items of furniture, a stove, refrigerator, microwave, and dishwasher were stolen. These items were recovered during the search of defendant's residence.

Lowe's Fur and Herb, Inc. was broken into on 24 November 2006 and various items were stolen, including articles of Carhartt clothing which was part of the company's inventory. In addition, the safe had been broken into and blank checks, invoices, stock certificates and other documents stolen therefrom. In addition, two guns belonging to Arthur Lowe, the owner of the business, were stolen. The clothing was found during the search of defendant's residence, and, following the search, defendant returned the firearms and other documents, which had been taken from the safe, to the sheriff's department.

At the close of the State's evidence, the trial court dismissed the charge of safecracking, but denied defendant's motions to dismiss the remaining charges. Defendant neither testified nor offered evidence in his own behalf, and renewed his motions to dismiss, which were again denied. The jury returned verdicts of guilty on each of the substantive offenses.

Defendant stipulated to having been convicted of the felony of third degree burglary in the State of Delaware on 12 June 1992 for an offense which occurred on 2 September 1991, of felonious breaking or entering and felonious larceny in Watauga County, North Carolina, on 7 September 2000 for an offense which occurred on 12 September 1999, and of felonious larceny in Wilkes County, North Carolina, on 5 June 2001 for an offense which occurred on 25 October 2000. The jury then found defendant guilty of having attained the status of an habitual felon. The trial court arrested judgment on each of the felonious larceny convictions. The trial court then determined that defendant had eight prior record level points and a prior record level of III, and entered judgment sentencing defendant in the presumptive range to a minimum term of 116 months and a maximum term of 149 months as an habitual felon for each of the ten felonies, to be served consecutively. Defendant appeals.

I.

**[1]** We first consider defendant's contention that the trial court erred in denying his motion to suppress evidence seized pursuant to the search warrant. "[A]ppellate review of a ruling upon a motion to suppress is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Johnston*, 115 N.C. App. 711, 713, 446 S.E.2d 135, 137 (1994).

Defendant's primary contention is that Detective Colvard intentionally omitted material facts from his application for the search warrant, which facts, if they had been included, would have disclosed that no probable cause existed. In the record before us, it does not appear that the trial court made specific findings of fact with respect to the alleged omission of facts from the probable cause affidavit, other than noting that there was no fabrication on the part of Detective Colvard. However, "[w]here there is no material conflict in the evidence, findings and conclusions are not necessary even though the better practice is to find facts." *State v. Edwards*, 85 N.C. App. 145, 148, 354 S.E.2d 344, 347, *cert. denied*, 320 N.C. 172, 358 S.E.2d 58 (1987). Thus, we must only consider whether the trial court's conclusions are supported by the evidence.

It is well settled "that a search warrant be based on probable cause." *State v. Fernandez*, 346 N.C. 1, 13, 484 S.E.2d 350, 358 (1997). "Probable cause for a search [warrant] is present where facts are stated which establish reasonable grounds to believe a search of the premises will reveal the items sought and that the items will aid in the apprehension or conviction of the offender." *Id.* Inherent in the showing of probable cause "is that there will be a *truthful* showing." *Franks v. Delaware*, 438 U.S. 154, 164-65, 57 L. E. 2d 667, 678 (1978), *on remand*, 398 A.2d 783 (Del. Supr. 1979). "Truthful" in this context "does not mean . . . that every fact recited in the warrant affidavit is necessarily correct." *Id.* at 165, 57 L. E. 2d at 678. However, the factual showing offered in support of probable cause should "be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Id.*

Though there is "a presumption of validity with respect to the affidavit supporting the search warrant," *id.* at 171, 57 L. E. 2d at 682, a defendant "may [still] challenge the truthfulness of the testimony showing probable cause." *State v. Steen*, 352 N.C. 227, 243-44, 536

S.E.2d 1, 11 (2000), *cert. denied,* 531 U.S. 1167, 148 L. Ed. 2d 997 (2001). The United States Supreme Court set forth the process and standard for making such a challenge by stating:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks,* 438 U.S. at 155-56, 57 L. Ed. 2d 672. Thus, a defendant must "establish facts from which the finder of fact might conclude that the affiant alleged the facts in bad faith." *Fernandez,* 346 N.C. at 14, 484 S.E.2d at 358. He cannot rely on evidence that merely "contradicts assertions contained in the affidavit, or even that shows the affidavit contains false statements." *Id.* Moreover, even if the defendant establishes that the affiant alleged the facts in bad faith, the warrant will not be voided if the remaining unchallenged factual allegations sufficiently establish probable cause for the search. *See Franks,* 438 U.S. at 155-56, 57 L. Ed. 2d at 672; *see also State v. Rashidi,* 172 N.C. App. 628, 634-35, 617 S.E.2d 68, 73 (holding that the search warrant was not void when the defendant failed to show that the alleged false statements were material), *aff'd per curiam,* 360 N.C. 166, 622 S.E.2d 493 (2005).

Defendant's motion to suppress evidence was based on the fact that, on its face, the search warrant failed to establish probable cause to search. Defendant did not allege that Detective Colvard's statements were made with "deliberate falsehood or [with] reckless disregard for the truth," and the trial court was not required to grant defendant a hearing on this issue. *Franks,* 438 U.S. at 171, 57 L. E. 2d at 682 (stating that, in order to "mandate an evidentiary hearing, . . . [t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof"). Even so, our review discloses that the trial court did, in fact, grant defendant a hearing in accordance with *Franks* and

ultimately concluded that "[t]here was no fabrication or any wrong-doing by" Detective Colvard.

The search warrant must be voided only if, after setting aside any false material, the affidavit fails to provide sufficient probable cause for the search. *Id.* at 156, 57 L. E. 2d at 672. Thus, "[w]e need not decide whether [the] defendant [has] sufficiently established know-ing or reckless falsehoods [when the] defendant has failed to demon-strate that any false statements were material." *Rashidi*, 172 N.C. App. at 634, 617 S.E.2d at 73; *see also United States v. Tate*, 524 F.3d 449, 455 (4th Cir. 2008) ("[I]n order . . . to be entitled to a *Franks* hearing on [a] challenge of [an officer's] affidavit, [a defendant] is required to make a substantial preliminary showing that [the officer] omitted material facts that when included defeat a probable cause showing . . . .").

Defendant argues that the evidence presented at the suppression hearing shows that Detective Colvard knowingly omitted material facts in his affidavit which were crucial to the finding of probable cause. Detective Colvard's affidavit states in pertinent part:

> On January 16th, 2007, the Ashe County Sheriff's Office received a report of a breaking and entering and larceny at the New River Outfitter's in the Crumpler area of Ashe County. Several items were taken in this break-in. On Friday January 19th, 2007, Lieutenant Detective Colvard located a registration card and business card bearing the name of Gene Wayne Haymond with an address of 515 Corporation St. Wilkesboro, NC 28697. . . . Lt. Colvard visited 515 Corporation St. Wilkesboro, NC and observed a coastal stainless steel grill on the side porch. Lt. Colvard noticed that this grill matched the description of a grill stolen on December 23, 2006, from another location in Ashe County. Lt. Colvard contacted the victim who also came to 515 Corporation St. and identified the grill as being his. The victim was certain of this because of a black bungee cord that he had applied to the grill.

Defendant argues Detective Colvard's testimony at the suppres-sion hearing materially contradicts the statements contained in his Probable Cause Affidavit. Defendant directs us to Detective Colvard's testimony that the break-in at New River Outfitters occurred in late December 2006, rather than in January 2007 as suggested in the affi-davit and nearer the time when Detective Colvard discovered the defendant's registration card and business card in the course of his

investigation. Citing *State v. Joyner*, 301 N.C. 18, 269 S.E.2d 125 (1980), defendant argues that omitting information showing that the breaking or entering could have occurred more than a month prior to the discovery of the cards materially reduces the likelihood that the stolen goods would be found at defendant's home. Defendant's contention is misplaced. The fact remains that the defendant's cards were discovered while Detective Colvard was still processing the scene for fingerprints, giving rise to a reasonable probability of defendant's presence there and that evidence relating to the crimes could be found at his residence. Probable cause requires a showing of "only the probability . . . of criminal activity." *State v. May*, 41 N.C. App. 370, 374, 255 S.E.2d 303, 306 (1979).

Likewise, defendant contends Detective Colvard's affidavit in support of the application for a search warrant omitted the fact, disclosed in his testimony, that the officer and Mr. Miller, whose grill was stolen in another December 2006 break-in, walked across defendant's yard, a possible violation of defendant's Fourth Amendment rights, to look at the grill before Mr. Miller was able to identify it. Again, we do not believe the omission is material; the porch where the grill was located was on the front portion of the house and was visible from the road, as was the grill. From that distance, Mr. Miller was "80 percent sure" the grill was his. Detective Colvard then accompanied Mr. Miller to defendant's house, where they pulled into the driveway, got out of the car, and walked through the yard to a point closer to the grill. From a closer vantage point, Mr. Miller was able to positively identify the grill as his based on the presence of the black bungee cord. When Mr. Miller and Detective Colvard walked through the yard, they merely looked at the grill and left. In doing so, neither Detective Colvard nor Mr. Miller violated defendant's Fourth Amendment rights. *See State v. Prevette*, 43 N.C. App. 450, 455, 259 S.E.2d 595, 599-600 (1979) ("Entrance [by a police officer] onto private property for the purpose of a general inquiry or interview is proper."), *appeal dismissed and disc. review denied*, 299 N.C. 124, 261 S.E.2d 925, *cert. denied*, 447 U.S. 906, 64 L. Ed. 2d 855 (1980); *see also United States v. Knight*, 451 F.2d 275, 278 (5th Cir. 1971) (finding that, even if the officer's entry onto private property was a trespass, the act of looking at an item in plain view was not an illegal search), *cert. denied by Grubbs v. United States*, 405 U.S. 965, 31 L. Ed. 2d 240 (1972). Accordingly, even considering the alleged omissions, we conclude the affidavit was sufficient to establish probable cause to believe the stolen items listed would be found in defendant's home.

[2] Defendant also argues that the trial court erred in denying his motion to suppress some of the items obtained during the search of his house because they were neither listed on the search warrant nor covered under the plain view doctrine. Specifically, defendant argues that it was not immediately apparent that these items were stolen. After a careful review of the record, we find defendant's argument has no merit.

We first note that defendant argues in his brief that "certain items" taken from defendant's home are inadmissible under the plain view doctrine. Yet, nowhere in his brief does defendant specifically state which of the items he challenges. However, after a review of defendant's assignments of error relating to this argument and the transcript references defendant has provided in his brief, it appears that defendant is objecting to the admission of a Toshiba television and Dewalt skill saw taken from Mr. Pelon's residence; assorted Carhartt clothing taken from Lowe Fur and Herb, Inc.; a microwave, refrigerator, dishwasher, and vanity taken from Mr. Ritch's residence; and a Jen-Air stove taken from Ms. Gambill's residence.

Under the plain view doctrine,

> police may seize contraband or evidence if (1) the officer was in a place where he had a right to be when the evidence was discovered; (2) the evidence was discovered inadvertently; and (3) it was immediately apparent to the police that the items observed were evidence of a crime or contraband.

*State v. Graves*, 135 N.C. App. 216, 219, 519 S.E.2d 770, 772 (1999). An item is "immediately apparent" under the plain view doctrine "if the police have probable cause to believe that what they have come upon is evidence of criminal conduct." *State v. Wilson*, 112 N.C. App. 777, 782, 437 S.E.2d 387, 389-90 (1993) (internal quotation marks omitted). Probable cause is present when "the facts and circumstances within their [the officers'] knowledge and of which they had reasonable trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *State v. Zuniga*, 312 N.C. 251, 261, 322 S.E.2d 140, 146 (1984) (alterations in original) (internal quotation marks omitted).

With regard to the Toshiba television and Dewalt saw, defendant appears to argue that the officers did not know these items were stolen until they were moved and the serial numbers were checked. In admitting the Dewalt saw, the trial court found

that upon the officers' entry and based on their prior investigations and knowledge they determined that other items appeared to be stolen from other break-ins, that subsequently as a result of the service of the search warrant on defendant . . . that the owner, the actual owner of the premises, Dawn Matthews, appeared and indicated to the officers . . . that she wanted any items that were stolen to be removed from the premises. And based on that officer's interpretation which the Courts find reasonable allowed them to begin to further search and open up items to determine whether or not they were stolen . . . and as a result the tools that were recovered in the Pelon case will be admissible.

The trial court made a similar finding in admitting the Toshiba television. After a review of the record, it appears that the detectives did not start opening the tool boxes until after Ms. Matthews had told them "that she wanted all the stolen property out of the house and that if it was even questionable she wanted it out." Moreover, there is evidence in the record that the officers did not begin to inventory anything until after they had talked to Ms. Matthews. These facts provide competent evidence to support the trial court's finding that Ms. Matthews gave the officers consent to further search the items to determine if they were stolen. *See State v. McLeod*, —— N.C. App. ——, ——, 682 S.E.2d 396, 399 (2009) (finding consent to search a residence may be determined from the words and actions of a co-habitant of that residence even if the other co-habitant has not consented). Since Ms. Matthews consented to the further search, the trial court's conclusion to admit these items was proper. *See State v. Williams*, 314 N.C. 337, 344, 333 S.E.2d 708, 714 (1985) ("Evidence seized during a warrantless search is admissible if the State proves that the defendant . . . consented to the search.").

We also conclude the microwave, refrigerator, dishwasher, and vanity stolen from Mr. Ritch's residence were properly admitted into evidence. In *State v. Weakley*, 176 N.C. App. 642, 627 S.E.2d 315 (2006), this Court held it was immediately apparent that a shower curtain found in the defendant's home was evidence of a crime when the officer testified the curtain matched pictures she had seen that the "victims ha[d] provided [her] of items that were taken from their bathroom." *Weakley*, 176 N.C. App. at 649-50, 627 S.E.2d at 320. Similarly, in the present case, Detective Jason Whitley ("Detective Whitley") of the Wilkes County Sheriff's Department testified that when he entered the kitchen, he immediately recognized the appliances as being items stolen from a break-in he was investigating. He

was certain of this because he had pictures of the items and had a "good recollection" of what the stolen items looked like. The microwave had additional physical characteristics that further indicated to Detective Whitley that it was stolen. Accordingly, the trial court properly concluded that these items were in plain view and thus admissible.

The Jen-Air stove stolen from Ms. Gambill's residence was also properly admitted. The evidence reveals that, upon entering defendant's residence, Detective Whitley noticed that the stove was unusual in that it did not vent into the ceiling but had a down vent. He testified that it was a unique model and stood out because the sides were missing when it appeared there should be something there. At this time, he only took a picture of the stove. There is no evidence that the stove was moved in order to take the picture. Therefore, this was not an impermissible search or seizure. *Arizona v. Hicks*, 480 U.S. 321, 324-25, 94 L. Ed. 2d 347, 353-54 (1987) (stating that "mere recording of the serial numbers did not constitute a seizure" and "[m]erely inspecting those parts of the [object] that came into view during the [original] search would not have constituted an independent search"). Detective Whitley later showed the picture to Ms. Gambill, who identified it as her stove. After receiving consent from defendant, Detective Whitley went back to defendant's home and seized the stove. In fact, defendant had the stove unhooked and ready for Detective Whitley to take when he arrived.

Finally, the trial court granted defendant's motion to suppress a quantity of Carhartt clothing that was found when the officers opened drawers, because it was not in plain view. However, the officers also discovered a quantity of the Carhartt clothing in the basement, plainly visible to anyone entering the area. Detective Carson testified that when he saw it he remembered "that Carhartt clothing had been stolen from Lowe Fur & Herb." From the tags attached to this Carhartt clothing, Detective David Johnson ("Detective Johnson") from the North Wilkesboro Police Department was able to determine that it was the clothing taken from Lowe Fur and Herb, Inc. Detective Johnson's observations gave him probable cause to believe that the clothing was stolen. The trial court did not err in determining that this clothing was admissible.

II.

**[3]** Citing *State v. Autry*, 321 N.C. 392, 364 S.E.2d 341 (1988), defendant argues the trial court impermissibly chilled his right to testify in

his own defense when it told him that statements made at the 7 January 2008 hearing could be used against him if he testified. In *Autry*, our Supreme Court found the trial court had incorrectly informed defendant when it said, "[The prosecutor] could, on good faith, ask you about prior misconduct, whether it resulted in convictions in court if they had some good faith reason to ask those questions, and you would be under oath to answer the questions truthfully." *Autry*, 321 N.C. at 402, 364 S.E.2d at 347. However, the Court held this error was harmless because the evidence overwhelmingly proved defendant's guilt and because the trial court repeatedly advised the defendant to consult his attorney before deciding whether to testify. *Id.* at 403-04, 364 S.E.2d at 348.

Defendant first suggests that the statements made at his hearing were inadmissible against him because they were made during a suppression hearing. It is true "that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." *State v. Bracey*, 303 N.C. 112, 120, 277 S.E.2d 390, 395 (1981) (quoting *Simmons v. United States*, 390 U.S. 377, 394, 19 L. Ed. 2d 1247, 1259 (1968)). However, the 7 January 2008 hearing was not one on a motion to suppress evidence, and the statements were made after defendant, though represented by counsel, asked to address the court. Prior to granting the request, the trial court warned the defendant that his statements could be used against him. Even if the statements had been made in the course of a motion to suppress evidence, use of the statements for impeachment purposes "is permissible under the holding in *Simmons*." *Id.* at 120, 277 S.E.2d at 396. The trial court expressly limited the use of these statements against defendant for impeachment purposes.

Defendant next contends the statements are inadmissible because they were made during the course of plea negotiations. Rule 410 of the North Carolina Rules of Evidence provides that "[a]ny statement made [by a defendant] in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn" is inadmissible at trial. N.C. Gen. Stat. § 8C-1, Rule 410(4) (2009); *see also* N.C. Gen. Stat. § 15A-1025 (2009) ("The fact that the defendant or his counsel and the prosecutor engaged in plea discussions or made a plea arrangement may not be received in evidence against or in favor of the defendant . . . ."). "Plea bargaining implies an offer to

plead guilty upon condition." *United States v. Porter*, 821 F.2d 968, 976-77 (4th Cir. 1987) (internal quotation marks omitted), *cert. denied*, 485 U.S. 934, 99 L. Ed. 2d 269, *reh'g denied*, 485 U.S. 1042, 99 L. Ed. 2d 919 (1988). Moreover, as the rule implies, "[p]lea negotiations, in order to be inadmissible, must be made in negotiations with a *government attorney* or with that *attorney's express authority*." *Id.* at 977 (emphasis added). "In addition, conversations with government agents do not constitute plea discussions unless the defendant exhibits a subjective belief that he is negotiating a plea, and that belief is reasonable under the circumstances." *State v. Curry*, 153 N.C. App. 260, 263, 569 S.E.2d 691, 694 (2002) (internal quotation marks omitted). Here, defendant's statements at the 7 January 2008 hearing appear to have been made in an attempt to ask for either a continuance or the trial court's mercy in imposing a lesser sentence than that offered by the prosecutor. Defendant was clearly aware that the prosecuting attorney was unwilling to accept defendant's plea in exchange for the sentence which defendant requested, and defendant, therefore, made his request of the court:

> I'm asking for mercy from the Court. Whether or not I deserve it, I'm not sure. When you look at my record or you look at these charges or the amount of money that Mr. Horner claims is at issue, I'm not sure that when you ask for mercy those things are—if—I don't expect any mercy from Mr. Horner. I'm asking for it from the Court.

In response to this request, the trial court indicated that it was not willing to impose any sentence less than what the prosecuting attorney had already offered. After having time to further consider the State's offer, defendant then decided to go to trial. From this evidence, it does not appear that defendant subjectively thought that he was negotiating a plea with the prosecuting attorney or with the prosecutor's express authority when he made statements at the 7 January 2008 hearing. Instead, the statements were made in the course of defendant's various requests to the trial court. Thus, defendant's argument that these statements were made during the course of plea negotiations, and thus inadmissible, fails.

Finally, defendant argues that the trial court incorrectly concluded that defendant's statements at the 7 January 2008 hearing were confessions. Thus, he contends that the trial court incorrectly informed him that the prosecutor could use the statements against him at trial. Under the North Carolina Rules of Evidence, an admission by a party opponent can be admitted against that party if it is "his

own statement, in either his individual or a representative capacity." N.C. Gen. Stat. § 8C-1, Rule 801(d)(A) (2009). "An admission is a statement of pertinent facts which, in light of other evidence, is incriminating." *State v. Trexler*, 316 N.C. 528, 531, 342 S.E.2d 878, 879-80 (1986). A confession is "an acknowledgment in express words by the accused in a criminal case of his guilt of the crime charged or of some essential part of it." *State v. Fox*, 277 N.C. 1, 25, 175 S.E.2d 561, 576 (1970). "A confession, therefore, is a type of an admission." *Trexler*, 316 N.C. at 531, 342 S.E.2d at 880. Accordingly, a statement is admissible against a party even if it is not technically a confession but qualifies as an admission.

At the 7 January 2008 hearing, defendant made various statements which implied his guilt of the charged offenses. At one point he said, "But in one case in Yadkin County they claimed $30,000 worth of blankets were stole, and there is no way. At the high side, it might have been $10,000 worth of blankets that were stole, and I admitted to that." These statements clearly qualify as "statement[s] of pertinent facts which, in light of other evidence, [are] incriminating." *Id.* at 531, 342 S.E.2d at 879-80. Accordingly, the trial court did not err when it ruled that these statements could be used against defendant for impeachment purposes or when it instructed defendant that the statements could be used against him at trial. Since the trial court did not err in advising defendant regarding the prosecutor's potential use of his statements made at the 7 January 2008 hearing, defendant's right to testify was not impermissibly chilled.

III.

**[4]** Defendant next challenges the trial court's denial of his motion to dismiss the breaking or entering charges. Specifically, defendant contends the State failed to provide sufficient evidence that he broke or entered into any of the buildings alleged in the bills of indictment. Upon a motion to dismiss, "the trial court must determine whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Garcia*, 358 N.C. 382, 412, 597 S.E.2d 724, 746 (2004), *cert. denied*, 543 U.S. 1156, 161 L. Ed. 2d 122 (2005). " 'Substantial evidence' is relevant evidence that a reasonable person might accept as adequate." *Id.* In determining whether there is substantial evidence, a "reviewing court considers all evidence in the light most favorable to the State, and the State receives the benefit of every reasonable inference supported by that evidence." *Id.* at 412-13, 597 S.E.2d at 746.

When the trial court does not instruct the jury "that it could convict [the] defendant if it found that he acted in concert with others in the commission of the elements of each of the offenses, the State ha[s] to satisfy the jury that [the] defendant personally committed every element of each offense." *State v. Smith*, 65 N.C. App. 770, 772, 310 S.E.2d 115, 116-17, *aff'd as modified*, 311 N.C. 145, 316 S.E.2d 75 (1984). "To support a conviction for felonious breaking and entering under G.S. § 14-54(a), there must exist substantial evidence of each of the following elements: (1) the breaking or entering, (2) of any building, (3) with the intent to commit any felony or larceny therein." *State v. Walton*, 90 N.C. App. 532, 533, 369 S.E.2d 101, 103 (1988). A breaking has been defined as "any act of force, however slight, employed to effect an entrance through any usual or unusual place of ingress." *State v. Myrick*, 306 N.C. 110, 114, 291 S.E.2d 577, 580 (1982) (internal quotation marks omitted). The element of an entry is satisfied if a person inserts "any part of the body, hand, . . . foot, or . . . any instrument or weapon" into a building. *State v. Turnage*, 362 N.C. 491, 494, 666 S.E.2d 753, 756 (2008) (internal quotation marks omitted).

In the present case, defendant was charged with the felonious breaking or entering of Mr. Ritch's residence, Mr. Pelon's residence, Ms. Gambill's residence, and the business of Lowe Fur and Herb, Inc. The trial court did not instruct the jury as to the doctrine of acting in concert, thus, the State was required to prove that defendant committed the offenses himself. The State concedes there was insufficient evidence presented at trial from which the jury could find that defendant either broke or entered into Mr. Pelon's residence, Mr. Ritch's residence, or Lowe Fur and Herb, Inc. Defendant's motions to dismiss those charges should have been granted, and we reverse his convictions of breaking or entering in 07 CRS 881, 07 CRS 886, and 07 CRS 50466.

With respect to the charge of breaking or entering into Ms. Gambill's residence, however, we reach a different conclusion. "Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. If the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances." *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 919 (1993) (citation and internal quotation marks omitted). If there is a reasonable inference, then the question of defendant's guilt is left to the jury. *Id.* The evidence surrounding the breaking or entering of Ms. Gambill's residence tended

to show that defendant and Daniel Ritcher went to Ms. Gambill's house together to "take the stuff [they] wanted to take." Ritcher gained entry into Ms. Gambill's house "through the window or the back door." It did not take long to load the items, which included a Jen-Air stove, a riding lawnmower, and a ladder. Based on the nature and size of the items taken, the evidence presented creates a reasonable inference that defendant entered Ms. Gambill's home to assist Ritcher in removing the property from the house quickly. Thus, the trial court did not err in denying defendant's motion to dismiss this breaking or entering charge.

IV.

[5] Finally, defendant argues that the trial court impermissibly sentenced him, at least in part, because of his insistence on having his cases tried by a jury. He thus contends that he is entitled to a new sentencing hearing.

"A sentence within statutory limits is presumed to be regular." *State v. Peterson*, 154 N.C. App. 515, 517, 571 S.E.2d 883, 885 (2002) (internal quotation marks omitted), *appeal after remand*, 168 N.C. App. 597, 608 S.E.2d 417 (2005). However,

> [w]here it can reasonably be inferred from the language of the trial judge that the sentence was imposed at least in part because defendant did not agree to a plea offer by the state and insisted on a trial by jury, defendant's constitutional right to trial by jury has been abridged, and a new sentencing hearing must result.

*State v. Cannon*, 326 N.C. 37, 39, 387 S.E.2d 450, 451 (1990). At a pre-trial hearing on 7 January 2008, defendant asked the trial court to consider a possible sentence of five years of imprisonment and five years of probation in response to an offer by the prosecutor to recommend a sentence of ten years. In response to this request, the trial court responded by saying, "So I'm just telling you up front that the offer the State made is probably the best thing." Defendant declined the State's offer.

At a subsequent pre-trial hearing on defendant's motion to suppress evidence, the subject of a plea arrangement was again discussed, and the trial court reminded defendant of the earlier discussions as well as the possible sentences which could be imposed if defendant were convicted of the offenses as an habitual felon. Defendant indicated that he understood the exposure, but declined the prosecutor's plea offer.

After defendant was found guilty of the offenses, and after hearing arguments by the State and defendant on the issue of mitigating factors, the trial court stated, "[w]ay back when we dealt with that plea different times and, you know, you told me you didn't have any drugs problems, you didn't have anything, what you wanted to do, and I told you that the best offer you're gonna get was that ten-year thing, you know." Defendant contends that, by that statement, an inference arises that the trial court based its sentence at least in part on defendant's failure to accept the State's plea offer. We agree.

In *State v. Hueto*, —— N.C. App. ——, ——, 671 S.E.2d 62 (2009), the trial court told the defendant prior to trial:

> [If you go to trial,] you are putting your faith in the hands of twelve strangers who do not know you, who do not know your situation, and if they find you guilty of the charges against both of these young girls, it will compel me to give you more than a single B-1 sentence, and I would have to give you at least two . . . and maybe more.

—— N.C. App. at ——, 671 S.E.2d at 67. After a jury trial, the defendant was convicted of two counts of first–degree rape and six counts of statutory rape. *Id.* at ——, 671 S.E.2d at 64. Before sentencing defendant to eight consecutive sentences, the trial court stated

> To you, Senor Hueto, I regret that you do [sic] not choose to take the offer that had been made to you at the beginning of the trial to plead guilty for a lesser sentence. And I had told you that I did not know what I would . . . give in terms of a sentence but that I would await the jury's verdict.

*Id.* at ——, 671 S.E.2d at 68. This Court found that, since the trial court had the discretion to consolidate defendant's convictions for the purpose of judgment, it could reasonably be inferred from these statements that the trial court's "decision to impose eight consecutive sentences was partially based on [the] Defendant's decision to plead not guilty." *Id.* at ——, 671 S.E.2d at 69.

Defendant was convicted of having committed the offenses after having attained the status of an habitual felon. N.C.G.S. § 14-7.6 mandates that when "an habitual felon . . . commits any felony under the laws of the State of North Carolina, the felon must, upon conviction . . . be sentenced as a Class C felon." .N.C. Gen. Stat. § 14-7.6 (2009). "Sentences imposed under this Article shall run consecutively with and shall commence at the expiration of any sentence being served by the person sentenced under this section." *Id.* "However,

in situations where a defendant is convicted of two or more offenses, the General Assembly has given the trial court discretion to consolidate the offenses into a single judgment." *State v. Tucker*, 357 N.C. 633, 636, 588 S.E.2d 853, 855 (2003); *see also* N.C. Gen. Stat. § 15A-1340.15(b) (2009) ("If an offender is convicted of more than one offense at the same time, the court may consolidate the offenses for judgment and impose a single judgment for the consolidated offenses."). Since N.C.G.S. § 14-7.6 does not expressly preclude the trial judge from exercising its statutory discretion under N.C.G.S. § 15A-1340.15(b), we see no reason to so hold. *See Bd. of Adjustment of Swansboro v. Town of Swansboro*, 334 N.C. 421, 427, 432 S.E.2d 310, 313 ("Statutes dealing with the same subject matter must be construed *in pari materia* and harmonized, if possible, to give effect to each."), *reh'g denied*, 335 N.C. 182, 436 S.E.2d 369 (1993); *see also Brisson v. Kathy A. Santoriello, M.D., P.A.*, 351 N.C. 589, 595, 528 S.E.2d 568, 571 (2000) (construing Rule 9(j) and Rule 41(a)(1) of the North Carolina Rules of Civil Procedure as compatible where Rule 9(j) did "not expressly preclude such complainant's right to utilize a Rule 41(a)(1) voluntary dismissal"). Thus, the trial court in the present case had the discretion to consolidate some or all of defendant's convictions for the purposes of judgment.

However, without consolidating any of defendant's convictions, the trial court sentenced defendant in the presumptive range as a Class C felon to ten felonies and made the sentences run consecutively. Thus, as in *Hueto*, we believe it may be reasonably inferred from the trial court's statements that it made this decision based at least in part on defendant's decision to refuse the State's plea offer. *See State v. Pavone*, 104 N.C. App. 442, 446, 410 S.E.2d 1, 3 (1991) (finding that the trial court's statement at sentencing that, "[y]ou tried the case out; this is the result" created a reasonable inference that the trial court impermissibly considered the defendant's failure to accept a plea in imposing its sentence). Accordingly, defendant is entitled to a new sentencing hearing.

07 CRS 000881—Reversed.

07 CRS 000886—Reversed.

07 CRS 050460—No Error At Trial; New Sentencing Hearing.

07 CRS 050466—Reversed.

08 CRS 000108—No Error At Trial; New Sentencing Hearing.

08 CRS 001470—No Error At Trial; New Sentencing Hearing.

08 CRS 001471—No Error At Trial; New Sentencing Hearing.

08 CRS 001472—No Error At Trial; New Sentencing Hearing.

08 CRS 001473—No Error At Trial; New Sentencing Hearing.

08 CRS 001474—No Error At Trial; New Sentencing Hearing.

08 CRS 001475—No Error At Trial; New Sentencing Hearing.

Judges HUNTER and ERVIN concur.